**Julia ROSA, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. No. 10163.**

United States District Court
D. Connecticut.

June 25, 1965.

Philip R. Shiff, New Haven, Conn., for plaintiff.

Gregory C. Willis, Bridgeport, Conn., for defendant.

---

ZAMPANO, District Judge.

The issue presented in this diversity action, tried to the Court without a jury, is whether the provisions of a homeowner's insurance policy issued by the defendant cover a judgment rendered by the Court, Blumenfeld, J., in a prior action between the plaintiff and the defendant's insured under the policy.

On November 11, 1960, sixteen-year-old Richard Delage was driving his father's station wagon along a public highway in Stamford, Connecticut, when he observed the plaintiff walking along the sidewalk. After parking the vehicle, Richard accosted the plaintiff with a gun in his hand and ordered her into the station wagon. When the plaintiff struggled and screamed out, Richard struck her, and when she continued to scream, he shot her in the head and on the left side of her body. At first he drove away from the scene, but a short time later he returned and was arrested by members of the local police department.

After being taken to the Stamford Hospital where plaintiff identified him as her assailant, Richard was interrogated at police headquarters and held on a charge of assault with a deadly weapon. However, after a psychiatric examination, he was committed to a state mental institution and the charge against him was nolled.

Plaintiff, having recovered from her wounds, instituted an action in this Court against Richard and, upon entry of default, she was awarded damages in the amount of $22,500.00. She now seeks to recover this judgment from the defendant.

At the time of the incident in question there was in effect a policy of general liability insurance issued by the defendant to George Delage, Richard's father. The policy provided coverage "to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person." The defendant concedes Richard, an unemancipated minor living with his parents, was an additional insured under the policy. However, it refuses payment under the standard exclusion portion of the policy which limits coverage if the injury was "caused intentionally by * * * the Insured."

Relying on the evidence that Richard borrowed the gun and purchased ammunition sometime prior to the incident, that he took the pistol with him and loaded it when he left his home that evening, that he left home "to look for a girl" so that he could have sexual relations with her, and that he had been thinking about having intercourse with a girl for "a few months", the defendant contends Richard's actions constitute a willful or malicious assault and battery and, therefore, were committed intentionally. The plaintiff, on the other hand, claims Richard was suffering from a mental illness which rendered him incapable of committing an "intentional" act.

Both parties introduced expert testimony. Dr. Bratt examined Richard on the night in question and testified, on direct examination, that in his opinion the boy's actions "must have been done in a perfect conscious condition" and that "he must have been well aware of what he was doing." However, on cross-examination, Dr. Bratt admitted Richard was suffering from a "psychopathic-sociopathic condition", that the diagnosis

of "acute schizophrenia", subsequently made by other doctors, was consistent with the symptoms he observed on the night of Richard's arrest, and that he recommended immediate commitment to a mental institution. In answering the Court's question as to his opinion of whether Richard had a full realization of the nature, quality and possible consequences of his actions, Dr. Bratt stated, in part, that although Richard "was aware of what he was doing, and he also was aware about the immorality of his acts. * * * I think that this boy was a sick boy, that his plan could only be raised in a sick mind; that his motivation can be explained only because of his apparent schizophrenic psychosis." Moreover, Dr. Bratt was of the opinion that Richard "had no intention" of injuring the plaintiff, and that he had "an impairment of judging what he was doing, and an impairment of control in his emotions and intentions."

From December 1, 1960 to July 9, 1961, extensive in-patient psychiatric studies of Richard were conducted at the Fairfield State Hospital. The hospital record indicates throughout diagnoses of "schizophrenia", "thought disorder", "inconsistent control of impulses", "intense anxiety", "strong depressive features" and "tendency to make bold, shocking demonstrations in the face of demand."

Doctors Stephens and Thompson deposed that Richard was suffering from schizophrenia involving "disorder of his feelings, disorder of his thinking, and as such he was incapable of control of his behavior" and that he demonstrated "marked hostility", and "impulsiveness and inadequacy of emotional control."

Dr. Rogowski, a psychiatrist of over thirty-five years' experience, testified in his opinion that Richard was the victim of schizophrenia, that this severe mental illness was of long standing, that his actions were "crazy", that "he had disordered thinking all the way along, and was not capable of forming an intent", and

that on the evening in question his "thinking broke down altogether."

Richard was called to testify but when it was learned he had a conservator appointed for him, that he was under the care of a psychiatrist and that any testimony concerning the events in question might cause psychological harm to him, the Court, with the consent of counsel, excused him from further appearance.

Upon all the evidence, it is clear that on November 11, 1960, and for a long time prior thereto, Richard was a victim of a severe mental illness diagnosed as acute schizophrenia. This disease encompasses paranoia, irresistible impulsive actions, thought disorder, hallucinations and aggression. Although prior to the incident in question Richard did perform certain purposeful acts and, later, after the incident he was able to recall the events of the night and in some fashion evaluate his behavior, the Court finds all his activities leading up to the attack on the plaintiff, and the attack itself, are traceable exclusively to the impairment of his judgment and rational capacity by the influence of schizophrenia. This derangement of his intellect deprived him of the ability to govern his conduct in accordance with reason and intent, to judge the nature, character and consequence of his act and to resist the impulses to do other than what he did.

Under these circumstances, his actions cannot be regarded as "intentional" within the meaning of an insurance contract. See Ruvolo v. American Cas. Co., 39 N.J. 490, 189 A.2d 204 (1963); State v. Donahue, 141 Conn. 656, 664, 109 A.2d 364 (1954); Mutual Life Ins. Co. v. Terry, 15 Wall. 580, 21 L.Ed. 236 (1873); and see cases collected at Hier v. Farmers Mutual Fire Insurance Co., 104 Mont. 471, 67 P.2d 831, 110 A.L.R. 1051.

Accordingly, judgment should, and hereby is, entered for the plaintiff to recover of the defendant the sum of $22,-500.00, with interest and costs.