AUTO-OWNERS INSURANCE COMPANY v CHURCHMAN

Docket No. 88923. Argued January 8, 1992 (Calendar No. 10). Decided September 9, 1992.

Auto-Owners Insurance Company brought a declaratory action in the Emmet Circuit Court against Beulah M. Churchman, personal representative of the estate of Gary W. Churchman, deceased, and others, seeking to determine its duty to defend or indemnify its insured, Henry G. Frost, Jr., under a homeowner's policy for murdering the deceased. The court, Richard M. Pajtas, J., granted summary disposition for the defendants, finding that an exclusionary clause in the policy was inapplicable because the insured did not have the mental capacity to intend or expect his actions. The Court of Appeals, BRENNAN, P.J., and MICHAEL J. KELLY and CYNAR, JJ., affirmed in an opinion per curiam, concluding that because of the contrary holdings of previous panels, it was impossible to conclude that the trial court's ruling was erroneous (Docket No. 111038). The plaintiff appeals.

In an opinion by Justice MALLETT, joined by Chief Justice CAVANAGH, and Justices BRICKLEY and BOYLE, the Supreme Court held:

While an insane or mentally ill insured may be unable to form the criminal intent necessary to be charged with murder, the insured still can intend or expect the results of injuries caused for purposes of applying the exclusionary clause in the plaintiff's homeowner's policy. Because the insured intended or expected the results of his acts, the exclusionary clause is applicable, and coverage is precluded.

1. An insurance policy is a contract. In order to effectuate the intent of the parties, the contract must be examined as a

REFERENCES

Am Jur 2d, Insurance §§ 708, 709.

Liability insurance: intoxication or other mental incapacity avoiding application of clause in liability policy specifically exempting coverage of injury or damage caused intentionally by or at direction of insured. 33 ALR4th 983.

Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured. 31 ALR4th 957.

whole and meaning given to all its terms. Any clause is valid as long as it is clear, unambiguous, and not in contravention of public policy; ambiguity may not be created where none exists. Exclusionary clauses are to be strictly construed in favor of the insured; clear and specific exclusions must be given effect. An insurance company may not be held liable for a risk it did not assume. In this case, the policy contained a clause that excluded coverage for bodily injuries caused by an insured that were expected or intended by the insured.

2. In order to avoid its duty to defend and indemnify, an insurer must show that the insured subjectively intended and expected injury to result from an intentional act. It is apparent in this case that the insured intended to injure the decedent and expected the resulting harm he caused; thus, the exclusion applies.

3. The insured knew what he was doing when he shot and killed the decedent. While he may not have been criminally liable for his acts, he was capable of foreseeing their consequences and understanding what he was doing. It is neither appropriate nor necessary to find that someone found not guilty by reason of insanity cannot be found to have intended actions that caused injury and to have expected their consequences. An insane or mentally ill person can intend or expect the results of personal actions within the meaning of an insurance policy's exclusionary clause.

Justice RILEY, joined by Justice GRIFFIN, concurring, stated that an insured's intent is to be inferred from the nature and type of conduct leading to the loss; it is not necessary to prove that the insured intended to specifically harm the person injured. The appropriate test for measuring the mental capacity of an insured to form the requisite intent must be consistent with the understood purpose of the exclusion, i.e., deterrence of intentional conduct. The insurer need only establish that the insured intended to cause the victim some type of harm, not that there was a specific intent to cause the injury as a consequence of the action. In this case, the insured's intent to murder the decedent may be inferred from the deliberate nature and the intentional type of conduct that led to the killing. Because the insured, while insane, intended to kill the decedent, the exclusionary provision of the policy precludes coverage.

Reversed.

Justice LEVIN, dissenting, stated that the Court of Appeals did not err in holding that where the insured lacked the mental capacity to intend or expect the consequences of his

actions, the policy exclusion for expected or intended injuries
does not relieve the insurer of its duty to defend and indemnify
the insured in the underlying actions, or in affirming the
circuit judge's ruling that on the basis of the evidentiary record
there is a genuine issue of material fact whether the insured
lacked the mental capacity to intend or expect the conse-
quences of his actions within the meaning of the policy exclu-
sion, and that therefore summary disposition may not be
entered for the insured.

   In applying the exclusion for injury expected or intended by
an insured person, the expectation or intention of the insured
is to be considered from the insured's subjective point of view.
Where an insane or mentally ill person commits an act that
results in injury and that person does not have the mental
capacity to appreciate the wrongfulness of the acts or form the
requisite mental intent to commit murder or an assault, cover-
age under this exclusionary clause is not precluded, and the
insurer is obligated to defend and indemnify the insured. The
facts of this case, which has not been tried, have not been
sufficiently developed to determine, as a matter of law, whether
Frost's mental incapacity would have prevented him from
appreciating the wrongfulness of his acts or from forming the
requisite mental intent to murder.

   184 Mich App 699; 459 NW2d 24 (1990) reversed.

INSURANCE — HOMEOWNER'S POLICIES — EXCLUSIONARY CLAUSES —
   CRIMINAL INTENT.

   An insane or mentally ill insured may intend or expect the
   results of the injuries personally caused for purposes of an
   exclusionary clause in a homeowner's insurance policy, even
   ·though the insured may be unable to form the requisite intent
   to be held criminally liable.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*
and *Charles H. Gano*), for the plaintiff.

*Stroup, Johnson & Tresidder, P.C.* (by
*Stephen J. Tresidder*), for defendant Beulah M.
Churchman.

*Burns & Spanos* (by *George D. Spanos*) for de-
fendant Frost Estate.

MALLETT, J. This is a declaratory action to deter-

mine the insurer's duty to defend or indemnify its insured for the murder of Gary Churchman.

We granted leave to consider whether insurance coverage is precluded as a matter of law because of an exclusion for bodily injury coverage when "expected or intended by an insured person" and the insured is mentally ill or insane.

We find that the Court of Appeals erred in holding that an insane or mentally ill person cannot intend or expect the consequences of his actions as required by the exclusion of plaintiff's homeowner's policy. We conclude that, while an insane or mentally ill insured may be unable to form the criminal intent necessary to be charged with murder, such an individual can still intend or expect the results of the injuries he causes.

I

On May 30, 1987, Henry Gordon Frost, Jr., and Mary Churchman had an argument. According to Mrs. Churchman, they often argued about Gary Churchman having legal custody of her children. She and Mr. Frost had had plans to marry, but on that night, Mary Churchman told him that she could not go through with the wedding while her ex-husband, Gary Churchman, had custody of the children.

Mr. Frost became furious. He told Mrs. Churchman that he had taken his revolver and was going to kill her ex-husband. Then he said that he would kill himself.

Mary Churchman was not worried by this because she had heard him make similar threats in the past. Usually, Mr. Frost went for a drive to cool off.

On that day, however, Mr. Frost did go to Gary Churchman's house. According to Leslie Kalchik,

Gary Churchman's girlfriend, she and her son were lying on the floor watching television when a car pulled into the driveway and someone knocked on the door. Mr. Churchman went to answer it. A few seconds later, Ms. Kalchik heard a shot and Gary Churchman came running up the steps saying he had been shot. Leslie Kalchik saw Mr. Frost at the door and then grabbed her son. She and her son quickly left the house and ran into the woods next door.

Mr. Frost followed Mr. Churchman up into the living room area and shot him at least three more times. The final shot he fired into Gary Churchman was into the back of his head. Before Mr. Frost left the house, he threatened to kill Beulah Churchman, Gary Churchman's mother. Mr. Frost then walked from the house to the garage, put the gun in his mouth and committed suicide.

It has been said that Henry Gordon Frost was a paranoid schizophrenic for most of his life; however, because of the limited procedural development of the record below, no evidence was presented on this point.[1] Nonetheless, at the time of his death, according to Sgt. Scott Croton of the Michigan State Police, Mr. Frost was not receiving treatment of any kind for any physical or mental illnesses immediately before his death.

This declaratory judgment action arises from two lawsuits that are the result of the tragic murder/suicide committed by Mr. Frost. The first was filed by Beulah Churchman, as personal repre-

---

[1] Although the parties stipulated at one point in the lower court proceedings that Mr. Frost was mentally incapacitated, it is clear that they did so for purposes of the summary disposition motion only. Further, upon remand of the case by this Court to clarify that stipulation, the trial judge concluded that Mr. Frost did not have the requisite mental capacity to form criminal intent to commit murder. However, that is not to say, nor did the trial judge conclude, that he did not have the necessary intent to kill Gary Churchman for purposes of the instant contractual language.

sentative of the estate of Gary Churchman, as well as next friend of the three Churchman children. The second was brought by Leslie Kalchik, Churchman's girlfriend, for herself and as next friend of Todd Ferguson, her son. Ms. Kalchik stated that at the time of Gary Churchman's murder, they were engaged to be married.

Henry Gordon Frost was the named insured of a homeowner's policy provided by plaintiff in the instant action, Auto-Owners Insurance Company.

Auto-Owners brought this declaratory action in Emmet Circuit Court in September of 1987. Trial court Judge Richard M. Pajtas held that although Michigan case law did not address the issue, a majority of jurisdictions found an exclusionary clause in an insurance policy inapplicable if the insured did not have the mental capacity to intend or expect his actions. He then denied plaintiff's motion for summary disposition and encouraged Auto-Owners to appeal. In the meantime, two decisions regarding this question were issued by the Court of Appeals. Each panel came to a different conclusion.

Plaintiff Auto-Owners applied to the Court of Appeals for leave to appeal, which was granted on January 5, 1989. The Court affirmed the decision of the trial court in an opinion per curiam, 184 Mich App 699; 459 NW2d 24 (1990), concluding that, because of the difference of opinion between the previous panels, it was impossible to conclude that the trial court's ruling was erroneous. *Id.* at 702. Plaintiff filed a timely application for leave to appeal in this Court.

II

We granted leave to consider whether insurance coverage is precluded as a matter of law because of

an exclusion providing no coverage for bodily injuries caused by an insured that were expected or intended by the insured where the insured is insane or mentally ill. The policy in this case stated:

COVERAGE E—PERSONAL LIABILITY

We will pay all sums which an insured person becomes legally obligated to pay as damages because of bodily injury, personal injury (libel, slander or defamation of character, false arrest, detention or imprisonment or malicious prosecution; invasion of privacy, wrongful eviction or wrongful entry) or property damage covered by this policy.

If a claim is made or suit is brought against the insured person for liability under this coverage, we will defend the insured person at our expense, using lawyers of our choice. We are not obligated to defend after we have paid an amount equal to the limit of our liability. We may investigate or settle any claim or suit as we think appropriate.

* * *

EXCLUSIONS

Under Personal Liability Coverage and Medical Payments to Others Coverage we do not cover:

* * *

7. bodily injury or property damage *expected or intended by an insured person.* [Emphasis added.]

An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962). Accordingly, the court must look at the contract as a whole and give meaning to all terms. *Fresard v Michigan Millers Mut Ins Co,* 414

Mich 686, 694; 327 NW2d 286 (1982). Further, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Raska v Farm Bureau Mut Ins Co of Michigan,* 412 Mich 355, 361-362; 314 NW2d 440 (1982). This Court cannot create ambiguity where none exists. *Edgar's Warehouse, Inc v United States Fidelity & Guaranty Co,* 375 Mich 598, 602; 134 NW2d 746 (1965).

Exclusionary clauses in insurance policies are strictly construed in favor of the insured. *Shelby Mut Ins Co v United States Fire Ins Co,* 12 Mich App 145, 149; 162 NW2d 676 (1968). However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. *Fresard, supra* at 695. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume. *Kaczmarck v La Perriere,* 337 Mich 500, 506; 60 NW2d 327 (1953).

In the instant case, the insurance policy contained an exclusionary clause that excluded coverage for bodily injuries caused by an insured that were expected or intended by the insured.

### III

In order to avoid its duty to defend and indemnify, plaintiff must show that the insured subjectively intended and expected injury to result from his intentional act.

This Court considered similar policy language in *Metropolitan Property & Liability Ins Co v Di-Cicco,* 432 Mich 656; 443 NW2d 734 (1989), and found that because the policy language included the phrase " 'from the standpoint of the insured,' " subjective intent was required. *Id.* at 708. The policy language in this case, "expected or intended

by an insured person," is unambiguous and requires a subjective intent; thus, the exclusion must be applied in its plain and easily understood sense. *Wertman v Michigan Mut Liability Co,* 267 Mich 508, 510; 255 NW 418 (1934).

Looking at the available facts of this case, we know that Mr. Frost left his home, stating his intentions. We also know that he drove to Gary Churchman's house, knocked on his door, and shot him numerous times. He then threatened Beulah Churchman, left the house, and killed himself.

It is apparent from these facts that Mr. Frost intended to injure Gary Churchman and expected at least to seriously harm him. No other interpretation is possible. Therefore, we find that Henry Gordon Frost indeed intended or expected the resulting harm he caused. We further find that the pertinent exclusion applies to the facts of this case.

IV

Therefore, the next question for us to determine is whether an insane or mentally ill person is capable of intending or expecting the consequences of his actions. We must determine if Mr. Frost knew what he was doing when he shot and killed Gary Churchman. We conclude that he did. While Mr. Frost may not have been criminally liable for his acts, he was capable of foreseeing their consequences and understanding what he was doing, i.e., ending another human being's life. Criminal intent is not required in these circumstances.

The ability of a mentally ill or insane person to distinguish right from wrong is not implicated in this situation. Criminal responsibility for those actions is not part of the necessary analysis in cases like the one before us today. Because we

have determined that Henry Gordon Frost intended to take a gun and shoot Gary Churchman, the exclusionary clause of the instant insurance contract applies and there is no coverage.

In *Transamerica Ins Corp of America v Boughton,* 177 Mich App 253; 440 NW2d 922 (1989), defendant Michael Boughton was found not guilty by reason of insanity after he killed his estranged wife. The estate of Joni Boughton filed a wrongful death action against the defendant, for which he sought coverage under his homeowner's insurance policy. However, Transamerica denied it had a duty to defend Boughton because of the policy exclusion of coverage for a claim of bodily injury or property damage that was expected or intended by the insured, and sought declaratory judgment.

On appeal, the Court of Appeals held that "the acts of a person deemed insane may be intentional within the meaning of an 'intentional and expected' acts exclusion." *Id.* at 258-259. The panel went on to say, "[f]ailure to prove sanity beyond a reasonable doubt and ability to prove by a preponderance of the evidence that an insured intended and expected injury are not necessarily contradictory propositions." *Id.* at 260.[2]

We agree with this reasoning and conclude that an insane or mentally ill person can intend or expect the results of his actions within the mean-

---

[2] In n 23 of his dissent, Justice LEVIN quotes the *Boughton* Court out of context. *Post,* p 588. In order to put this quote in context, we feel it necessary to provide the rest of the text:

Defendants argue that, because Boughton was adjudicated to be insane at the time of the shooting, he could not intend or expect to cause his wife's death. Cases involving a policy which excludes both intentional and expected injuries hold that, in order to avoid liability through the exclusion for expected injury, the insurer must show that the injury was the natural, foreseeable, expected, and anticipatory result of an intentional act. [177 Mich App 255-256.]

ing of an insurance policy's exclusionary clause. Further, we do not believe that it is appropriate or necessary to find that someone found not criminally liable by reason of insanity cannot be found to have intended his actions and to have expected their consequences.

Foreign jurisdictions are in agreement with these principles. In *Johnson v Ins Co of North America*, 232 Va 340; 350 SE2d 616 (1986), a mentally ill friend of the plaintiff shot the plaintiff in his home, injuring him severely. On the day in question, the plaintiff's friend had specifically planned to kill him, telling police that he simply wanted to shoot him, so he did.

> Here, when Davis aimed the pistol at Johnson, he knew that he was shooting a human being. Acting deliberately and methodically, Davis had searched for and found a pistol, loaded it, travelled to the victim's home, waited for him, begun talking with him, and shot him from close range. He acted with resolve and determination, not knowing that what he was doing was wrong because God had ordered him to act. In pointing the pistol at Johnson, Davis did not think, for example, that he was peeling a banana; he was not psychotic to an extreme degree, as the victim readily recognizes when he notes that Davis "did have this minimal degree of awareness of his actions." That is sufficient. The shooting was not accidental, a risk insured against, but intentional. [*Id.* at 347-348.]

The *Johnson* court concluded that a finding of not guilty by reason of insanity does not negate intent, it merely excuses the act of the individual committing the crime. An individual can have every intention of performing an act and fully intend or expect the consequences that occur. *Id.* at 348. However, the punishment is not required upon a showing that the person was not guilty by

reason of insanity. A finding of not guilty by reason of insanity does not mean lack of intent. This allows an exclusionary clause in an insurance policy to apply to these facts.[3]

In *Rajspic v Nationwide Mut Ins Co,* 110 Idaho 729; 718 P2d 1167 (1986), Grace Rajspic shot William Brownson during an altercation. Rajspic was acquitted of assault with a deadly weapon because of mental disease or defect excluding responsibility. The Rajspics had an insurance policy with Nationwide Mutual, which excluded acts caused intentionally by or at the direction of the insured. The court found that it was possible for an insane person to not be criminally liable for the acts, but still intend them as required under an insurance policy.

---

[3] In his dissent, Justice LEVIN discusses *Johnson, supra. Post,* p 588. In order to provide a clearer picture of what the court said in this case, we feel it necessary to quote from the opinion:

> On the surface, there appears to be a blatant inconsistency in concluding, as we do, that a person may be criminally insane when shooting another, and thus avoid full criminal sanctions, and yet that same individual can be denied insurance coverage because he "intended" to shoot his victim. A more careful analysis, however, will reveal there is no inconsistency at all.
>
> In the law, there are many situations in which a person may intentionally injure or kill another and not be subject to criminal punishment. For example, an individual may kill in self-defense. The executioner may kill with the sanction of the State. A soldier may injure or kill under rules of combat. This conduct is intentional, but it is also excusable. Likewise, an individual may be excused from penalty if he is insane at the time he commits a criminal act. As here, he may do the act with every intention of consummating it, but when it is shown that he was mentally ill, he is excused from the imposition of the usual sanctions. "The absence of punishment, however, does not retrospectively expunge the original intention." *Colonial Life & Accident Ins Co* [*v Wagner*], 380 SW2d [224] 226 [Ky App, 1964].
>
> In sum, we hold, in the words of the trial judge, that Davis "intended to shoot Kevin Johnson and he did so." The insurer carried the burden to establish that Davis was aware of what he was doing and that he intended injury to Johnson. Therefore, the exclusion applies. [232 Va 348.]

The court agreed with the general proposition that "a person who is considered insane may still be capable of entertaining the intent to commit certain tortious acts even though he entertains that intent as a consequence of his delusion or affliction." *Id.* at 732. (Citations omitted.)

In *Colonial Life & Accident Ins Co v Wagner*, 380 SW2d 224 (Ky App, 1964), Warren Shockley walked into a Lexington, Kentucky, hotel and shot and killed the defendant's decedent. Shockley was found guilty of voluntary manslaughter. The decedent's insurance policy contained a provision that excluded coverage when the insured's death or other loss was caused by " 'injuries intentionally inflicted upon the Insured Employee by any other person.' " 380 SW2d 225. The defendant claimed that Warren Shockley was mentally ill at the time of the murder and, therefore, he was unable to intentionally commit the crime. Shockley admitted that, at the time of the shooting, he intended to injure Mr. Wagner. The court found that, although an individual may be excused from punishment for his act if he is mentally ill, the intent behind the act is not retrospectively expunged. *Id.* at 226. An insane person can intend the consequences of his acts. Under the terms of the policy, the court held that Shockley's acts were intentional and fell within the exclusion. *Id.* at 227.

Therefore, we conclude that Henry Gordon Frost was capable of intending or expecting the results of his actions as required by the exclusionary language in the homeowner's policy. Thus, coverage is precluded.

V

In conclusion, we hold that it is possible for an insane or mentally ill person to intend or expect

the injuries he causes within the meaning of the insurance policy language. This is not to say that the insured is necessarily criminally liable for his acts. We find that an insane or mentally ill individual can still form the requisite intent to injure another and yet may not be considered criminally culpable. We also conclude that under the facts of this case, Henry Gordon Frost intended or expected the results of his acts. He purposely went to Gary Churchman's house and shot him four times at close range. Further, the exclusionary clause in plaintiff's policy is applicable, and plaintiff is relieved of its duty to defend and indemnify under the policy. Thus, we reverse the decision of the Court of Appeals.

CAVANAGH, C.J., and BRICKLEY and BOYLE, JJ., concurred with MALLETT, J.

RILEY, J. (*concurring*). The exclusionary language used by the insurer in the insured's policy provides that coverage will be precluded where "bodily injury [is] expected or intended by an insured person."[1] Because this language is analogous to that used by the insurer in *Metropolitan*

---

[1] My views on this matter are unchanged from those I set forth in my separate opinion in *Metropolitan Property & Liability Ins Co v DiCicco*, 432 Mich 656, 676-678; 443 NW2d 734 (1989). In *DiCicco*, I argued that where a homeowner's insurance policy includes an exclusionary clause which provides that the insurer will not cover "bodily injury or property damage which is either expected or intended from the standpoint of the insured," *id.* at 672, an objective standard should be used to measure the intent of the insured. *Id.* at 676. However, a majority of this Court concluded that the subjective standard should be used to measure the intent of the insured in light of the relevant exclusionary language. *Id.* at 709-710 (opinion of BOYLE, J.), 730 (opinion of ARCHER, J.), 737 (opinion of CAVANAGH, J.), and 756 (opinion of LEVIN, J.). In the instant case, as in *DiCicco*, the majority has once again employed the subjective standard in light of the exclusionary language, and found that the insured, an insane individual, is able to "intend or expect the results of the injuries he causes." MALLETT, J., *ante,* p 563. While I agree with the majority's holding, I write separately to further explain my reasoning.

*Property & Liability Ins Co v DiCicco,* 432 Mich 656, 676; 443 NW2d 734 (1989), we must apply the subjective standard, as interpreted in *DiCicco,* to the facts of this case. Moreover, in the instant case, we must evaluate the one exception to the exclusionary language, i.e., whether the insured, stipulated by the parties to be insane for the purposes of plaintiff's dispositive motion, formed the requisite intent to intend the consequences of his actions.

As indicated by the majority, the trial court denied plaintiff's motion for summary disposition, finding that the exclusion did not preclude coverage because the insured could not be found to have intended or expected to kill the decedent and frighten his family. The Court of Appeals affirmed.[2] Before granting leave to appeal, we ordered the trial judge to ascertain the scope and content of the stipulation that was made by the parties for the purpose of plaintiff's motion. At the conclusion of the hearing, the trial court opined "that the scope of the stipulation was that Mr. Frost was insane and did not have the mental capacity to appreciate the wrongfulness of his acts to form the requisite mental intent to commit murder or some type of assault." We granted leave to appeal.[3]

I

The majority has identified the numerous rules of insurance contract construction on which the Court must rely to interpret an insurance contract.[4] It is safe to assume that these rules of construction have a proinsured, procoverage bias,

---

[2] 184 Mich App 699; 459 NW2d 24 (1990).

[3] 438 Mich 862 (1991).

[4] MALLETT, J., *ante,* pp 566-567.

reflecting a belief that in the typical situation where a private individual, as opposed to a business entity, is purchasing insurance from an insurer, the parties do not share equal bargaining strength. *Powers v DAIIE,* 427 Mich 602, 608; 398 NW2d 411 (1986) (WILLIAMS, C.J.). Nevertheless, we have also consistently followed the rule of construction that rejects the temptation to rewrite the plain and unambiguous meaning of a policy under the guise of interpretation. We will not create an ambiguity where none exists. *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197, 206-207; 476 NW2d 392 (1991) (opinion of RILEY, J.).[5]

Contrary to the expansive approach in evaluating coverage language,[6] we have taken a fairly narrow approach to interpreting exclusionary language in insurance contracts. *DiCicco, supra* at 672. We have placed a heavy burden on the insurer to draft exclusionary clauses in clear language comprehensible to lay persons for an exclusion to be operative against the insured. *DiCicco, supra* at 665; *Upjohn, supra* at 206. In short, the

---

[5] As we have previously stated:

"An insurance policy is a contract and should be interpreted according to its plain meaning. The court is mindful of the rule of law that where the provisions of an insurance policy are uncertain or ambiguous, or the meaning is not clear, that those terms should be given such interpretation or construction as is most favorable to the insured. This rule does not mean, however, that the plain meaning of plain words should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefiting the insured." [*Wozniak v John Hancock Mut Life Ins Co,* 288 Mich 612, 615; 286 NW 99 (1939).]

[6] The insurer's duty to provide a defense extends to allegations *which even arguably come within the policy coverage.* [*Polkow v Citizens Ins Co of America,* 438 Mich 174, 180; 476 NW2d 382 (1991). Emphasis added.]

exclusionary language must be clear and unambiguous. *Id.*

II

Insurers incorporate exclusionary provisions to deter intentional losses that are consciously and deliberately brought about by the insured.[7] The instant case presents the Court with the opportunity to explore the one limitation on the policy exclusion for intentional acts,[8] i.e., the requirement that the insured must *intentionally* cause the injury to a third party.[9] The difficulty in this case is that the insured, who was stipulated to be insane at the time of committing the act, must be proven to have had the requisite mental capacity to commit an intentional act for the purpose of summary disposition.

In *DiCicco,* we adopted the subjective standard to measure the intent of the insured where the exclusion precludes coverage where "bodily injury [is] expected or intended from the standpoint of the insured."[10] The subjective standard, however, was not strictly applied. Had the Court applied a purely subjective standard, the exclusion would only apply when the insured committed the act resulting in a loss with the actual specific intent to

[7] See Keeton & Widiss, Insurance Law, § 5.4(d), p 518; 10 Couch, Insurance, 2d (rev ed), § 41:672, pp 681-682.

[8] There is, of course, a distinction between "intending" the result of one's volitional act, or "expecting" the consequence of completing a deliberate act. I would only hold that the insured's intent is inferred from the nature of the act—announcing his intention, driving home to obtain his gun, driving over to Churchman's house, deceptively calling him out on his porch, following him through the house to complete the job, telling the witnesses that they ought to keep quiet, and finally killing himself—and that we need not reach the issue whether he "expected" to kill Churchman.

[9] 10 Couch, Insurance, 2d (rev ed), § 41:676, pp 686-688; § 41:684, pp 694-695.

[10] See n 1.

bring about that loss. This Court, however, wisely rejected the pure subjective standard and, instead, blended the subjective requirement with a policy-based approach. *DiCicco, supra* at 679, 682 (opinion of RILEY, C.J.) ("[a]lthough the defendant denies any intent to injure, his actions speak louder than [his] words"). See also *id.* at 718, n 12 (opinion of BOYLE, J.) ("[t]hus, as Justice ARCHER observes, *post,* p 731, n 11, the insured need not intend the actual bodily injury inflicted in order to fall under the exclusionary clause"), *id.* at 731, n 11 (opinion of ARCHER, J.) ("I wish to make it clear that the insured need not intend the actual bodily injury inflicted in order to fall within the instant exclusionary clause. It is sufficient that the fact-finder conclude the insured subjectively expected some *type* of harm reasonably foreseeable from the insured's standpoint") (emphasis in original). The difference between these approaches turns on whether the insured had intended the specific injury that in fact occurred, or whether the insured possessed a general intent to intend some injury. The general intent to injure is best characterized as requiring: (1) that the insured intended both the act as well as the infliction of an injury, and (2) that once it is found that some harm was intended, it is immaterial that the actual harm caused is of a different character or magnitude than that intended. Under our approach, the insured's intent is inferred from the nature and type of conduct that led to the loss.[11] It is not necessary

[11] Under the objective standard that I advocated the Court adopt in *DiCicco, supra* at 676-678, the insured is presumed to have intended the consequences of his activity. Thus, as the objective standard applies to the determination whether the insured intended to do an act from which the injury or loss resulted, the purely subjective standard would focus on whether the insured had the conscious objective to bring about the injury or loss in fact resulting from his conduct.

to prove that the insured intended to specifically harm the individual.

The majority's application of the facts to the above-quoted rule is in accord with the *DiCicco* principle. Although insane, the insured intended to kill the decedent because

> we know that Mr. Frost left his home, stating his intentions. We also know that he drove to Gary Churchman's house, knocked on his door, and shot him numerous times. He then threatened Beulah Churchman, left the house, and killed himself.
>
> It is apparent from these facts that Mr. Frost intended to injure Gary Churchman and expected at least to seriously harm him. No other interpretation is possible. Therefore, we find that Henry Gordon Frost indeed intended or expected the resulting harm he caused. [MALLETT, J., *ante,* p 568.]

I agree with this observation. The insured's intent to murder Churchman is inferred from the deliberate nature and the intentional type of conduct that led to his death. Therefore, summary disposition in favor of the plaintiff insurer must be entered.

In dissent, Justice LEVIN advocates the adoption of a per se rule, finding that if an insane individual does not have the mental capacity to commit murder under the criminal law, that person is not capable of intending or expecting the consequences of his actions for the purpose of the exclusionary language used by Auto-Owners. LEVIN, J., *post,* p 584. I cannot agree with this argument.

The appropriate test for measuring the mental capacity of the insured to form the requisite intent must be consistent with the understood purpose of the exclusion, not the criminal law. As we stated

earlier in this opinion, the underlying purpose of an exclusionary clause is not to afford compensation to the person who suffered the injury at the hands of the insured. Nor is moral culpability the dispositive issue. Rather, the purpose is to deter the intentional conduct that the insurer expressly precludes from coverage.[12]

In addition, given the nature of the subjective standard of measuring the intent of the insured that we adopted in *DiCicco*—that the insured need not intend the actual bodily injury inflicted—the rule advanced by Justice LEVIN cannot be adopted. Under Justice LEVIN's analysis, the Court would be adopting the pure subjective standard. In *DiCicco,* we unanimously rejected that standard, and concluded that the insurer need only establish that the insured intended to cause the victim some type of harm, not that he specifically intended to cause the injury as a consequence of his action. *DiCicco, supra* at 679, 682 (opinion of RILEY, C.J.); *id.* at 718, n 12 (opinion of BOYLE, J.); *id.* at 731, n 11 (opinion of ARCHER, J.). Because Justice LEVIN has not offered a persuasive reason to adopt the pure subjective standard for insane individuals, or any reason to retrench from the policy-blended subjective standard that we adopted in *DiCicco,* his argument must also be rejected.

III

The true goal of the intentional act exclusion is deterrence. Given the exclusionary language used by Auto-Owners, and the application of the policy-blended subjective standard that we unanimously adopted in *DiCicco,* we must conclude that while insane, the insured intended to kill Churchman.

[12] 10 Couch, Insurance, 2d (rev ed), § 41:676, pp 686-688; § 41:684, pp 694-695.

Accordingly, the exclusionary provision of Auto-Owners policy precludes coverage.[13]

GRIFFIN, J., concurred with RILEY, J.

LEVIN, J. (*dissenting*). The question presented is whether, where, as stipulated, the insured was insane and did not have the mental capacity to appreciate the wrongfulness of his acts or form the requisite mental intent to commit murder or an assault, the injury caused by the insured was "expected or intended" within the meaning of an exclusion to a homeowner's liability policy.

I would hold that the Court of Appeals did not err in holding that where the insured lacked the mental capacity to intend or expect the consequences of his actions, the policy exclusion for "expected or intended" injuries does not relieve the insurer of its duty to defend and indemnify the insured in the underlying actions.

I would further hold that the Court of Appeals did not err in affirming the circuit judge's ruling that on the basis of the evidentiary record so far made there is a genuine issue of material fact whether the insured lacked the mental capacity to intend or expect the consequences of his actions

---

[13] I agree with the majority that there is no conflict in the Court of Appeals regarding this issue. MALLETT, J., *ante*, pp 569-570. As we stated in *DiCicco*, we must first evaluate the language of the exclusion, and then determine which standard to apply. The language used by the insurer in *Transamerica Ins Corp of America v Boughton,* 177 Mich App 253; 440 NW2d 922 (1989), required the Court to use the subjective standard in evaluating the facts in that case. The *Boughton* language is analogous to the language used by the insurer in this case, and, therefore, the result is consistent with this opinion. However, the language used by the insurers in *Allstate Ins Co v Miller,* 175 Mich App 515; 438 NW2d 638 (1989), *Allstate Ins Co v Miller (On Remand),* 185 Mich App 345; 460 NW2d 612 (1990), and *Mattson v Farmers Ins Exchange,* 181 Mich App 419; 450 NW2d 54 (1989), used language requiring the application of the objective standard. Therefore, the objective standard controlled the resolution of that case. In sum, there is no conflict with the Court of Appeals decisions.

within the meaning of the policy exclusion, and that therefore summary disposition may not be entered for the insured.

I

Harry Gordon Frost, Jr., announced that he intended to kill Gary Churchman, and then kill himself. Frost then proceeded to Churchman's home, shot and killed him, and then shot and killed himself. Actions in tort were commenced against Frost's estate for loss caused by the shooting.

Frost is the named insured under a homeowner's insurance policy issued by Auto-Owners Insurance Company. Auto-Owners commenced this declaratory judgment action contending that it was not obliged to provide coverage.

It appears that Frost was a paranoid schizophrenic most of his life. For the purposes of this declaratory judgment action only, Auto-Owners and Churchman stipulated:

> Frost was insane and did not have the mental capacity to appreciate the wrongfulness of his acts or form the requisite mental intent to commit murder or some type of an assault.[1]

---

[1] After deciding to grant leave to appeal in this case, this Court remanded the case to the trial court for a hearing to clarify the scope and content of the stipulation entered into by the parties.

The judge based denial of summary disposition on his characterization of the parties' stipulation which he described as follows:

> For purposes of this motion, the parties have stipulated that Henry Gordon Frost, Jr. did not have the mental capacity to "intend or expect" his acts.

This was apparently an overbroad characterization of the parties' stipulation. After reviewing the records and listening to arguments of counsel, the circuit judge found that the scope of the stipulation was as set forth in text.

Auto-Owners moved for summary disposition contending that there was not a genuine issue of material fact concerning the nature and character of the shooting incident, and that Frost's intent or expectation to cause bodily harm could be inferred from his actions as a matter of law.

The judge, after finding no binding Michigan case law deciding the issue, examined case law in other states, adopted the "majority standard," and denied Auto-Owners' motion for summary disposition and entered summary disposition in favor of the defendants who are the plaintiffs in the tort actions.[2] The Court of Appeals affirmed.[3]

II

The policy obligates the insurer to pay all sums that Frost becomes legally obligated to pay because of "bodily injury," but does not cover bodily injury "expected or intended" by Frost.[4]

---

[2] The judge granted Churchman's motion for summary disposition. Later, the judge, on a motion for reconsideration, vacated the summary disposition in favor of Churchman, finding that there was a genuine issue of material fact whether Frost lacked the mental capacity to intend or expect Churchman's death within the meaning of the policy exclusion.

[3] 184 Mich App 699; 459 NW2d 24 (1990).

[4] The relevant provisions are contained in section II, Personal Liability Protection:

COVERAGE E—PERSONAL LIABILITY

We will pay all sums which an insured person becomes legally obligated to pay as damages because of bodily injury, personal injury (libel, slander or defamation of character, false arrest, detention or imprisonment or malicious prosecution; invasion of privacy, wrongful eviction or wrongful entry) or property damage covered by this policy.

If a claim is made or suit is brought against the insured person for liability under this coverage, we will defend the insured person at our expense, using lawyers of our choice. We are not obligated to defend after we have paid an amount equal to the limit of our liability. We may investigate or settle any claim or suit as we think appropriate.

The policy is not an "occurrence based" policy. There is, thus, no issue whether the facts as stipulated are an "occurrence" under the policy. The only issue presented is whether, assuming the facts as stipulated, the mental incapacity of the insured might preclude applying the exclusion for intended or expected injuries.

I agree with the majority that in applying the exclusion for injury "expected or intended by an insured person," the expectation or intention of the insured is to be considered from the insured's subjective point of view. This is consistent with *Metropolitan Property & Liability Ins Co v DiCicco,* 432 Mich 656; 443 NW2d 734 (1989), where a majority of this Court ruled that the language of a similar exclusionary clause[5] unambiguously required a subjective standard.

I disagree with the decision of the majority that if an insane or mentally ill person is capable of intending or expecting the consequences of his actions, then, although he lacks, by reason of insanity, the mental capacity to appreciate the wrongfulness of his acts or to form the requisite intent to commit murder, the exclusionary "expected or intended" language applies and coverage under the policy is precluded.

*  *  *

EXCLUSIONS

Under Personal Liability Coverage and Medical Payments to Others Coverage we do not cover:

*  *  *

7. bodily injury or property damage expected or intended by an insured person.

[5] The exclusionary clause at issue in *DiCicco* stated that the policy did not provide coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." 432 Mich 672.

III

Most courts that have considered the question have ruled that an insane person cannot intentionally cause injury so as to exclude the resulting loss from coverage under an insurance policy containing an "intentional or expected" injury exclusion.

These courts have observed that such an exclusionary provision, which is to be strictly construed against the insurer, seeks to preclude persons from benefiting financially when they deliberately cause injury. A person who lacks the capacity to conform his behavior to acceptable standards will not be deterred by the exclusionary "expected or intended" language. Some of these cases have said that an "insane person cannot commit an intentional act within the meaning of the intentional injury exclusion clause."[6] In all these cases, it was a question of fact whether the person was indeed so insane.

In *Ruvolo v American Casualty Co,* 39 NJ 490; 189 A2d 204 (1963), the insured shot and killed a business associate, and was committed to a mental hospital after being found to be suffering from paranoid schizophrenia. The examining psychiatrists said that his mental disorder

"rendered him incapable of distinguishing right

---

[6] See *Ruvolo v American Casualty Co,* 39 NJ 490; 189 A2d 204 (1963); *Globe American Casualty Co v Lyons,* 131 Ariz 337, 343; 641 P2d 251 (1982); *Parkinson v Farmers Ins Co,* 122 Ariz 343; 594 P2d 1039 (1979); *Clemmer v Hartford Ins Co,* 22 Cal 3d 865; 151 Cal Rptr 285; 587 P2d 1098 (1978); *Mangus v Western Casualty & Surety Co,* 41 Colo App 217; 585 P2d 304 (1978); *Rosa v Liberty Mut Ins Co,* 243 F Supp 407 (D Conn, 1965); *George v Stone,* 260 So 2d 259 (Fla App, 1972); *Arkwright-Boston Manufacturers Mut Ins Co v Dunkel,* 363 So 2d 190 (Fla App, 1978); *Northland Ins Co v Mautino,* 433 So 2d 1225 (Fla App, 1983); *Aetna Casualty & Surety Co v Dichtl,* 78 Ill App 3d 970; 398 NE2d 582 (1979); *Aetna Casualty & Surety Co v Freyer,* 89 Ill App 3d 617; 411 NE2d 1157 (1980); *von Dameck v St Paul Fire & Marine Ins Co,* 361 So 2d 283 (La App, 1978); *U S F & G Ins Co v Brannan,* 22 Wash App 341; 589 P2d 817 (1979).

from wrong, that his insight and judgment were defective, that he was possessed with delusions of persecution, and that he did not at the time know the nature or quality of his acts and lacked the mental capacity to control his conduct." [*Id.* at 494-495.]

The Supreme Court of New Jersey rejected the insurer's argument that coverage for the resulting wrongful death actions was precluded because the insured intentionally caused the victim's death. The court said:

> In applying the exclusionary provision, however, whether in a life, accident, liability or fire policy, it has come to be commonly accepted that where the death or loss involved, be it of the insured or caused by the insured, is the product of an insane act, recovery is not barred. . . . In this context, however, the critical, or precise, problem is the nature or extent of the mental incapacity necessary to transmute the character of the act involved from intentional to insane.
>
> *     *     *
>
> We have no doubt that if a homicidal act of an insured is of such character as to excuse him from criminal responsibility because of insanity, i.e., because at the time of its commission he did not have the mental capacity to understand the nature and quality of his act, or to be able to distinguish between right and wrong with respect to it, the killing should not be considered "intentional" within the meaning of the defendant's policy. [*Id.* at 496-498.][7]

In *Globe American Casualty Co v Lyons,* 131 Ariz 337, 343; 641 P2d 251 (1982), the insured, who was mentally ill, "intentionally caused" an automobile collision. The court said that "[i]n light of

---

[7] The court remanded the case for trial on the issue of the insured's insanity for the purposes of the exclusionary clause.

the overwhelming testimony that [the insured] was unable to act in accordance with reason at the time of the collision," coverage under the policy was not precluded by the exclusionary clause. The court explained:

> To hold, as [the insurer] argues, that mental illness is irrelevant for purposes of determining whether an act is "intentional" is inconsistent with long standing policy considerations in insurance law. Exclusionary provisions are to be strictly construed against an insurer. . . . Furthermore, to deny coverage for acts caused by an individual lacking the mental capacity to act rationally is inconsistent with a primary purpose for incorporating intentional injury exclusions into insurance policies, i.e., to preclude individuals from benefiting financially when they deliberately cause injury. . . . An individual who lacks the capacity to conform his behavior to acceptable standards will not be deterred by the existence or nonexistence of insurance coverage for the consequences of his acts. [*Id.* at 339-340.][8]

In addition to the Supreme Court of New Jersey[9] and the courts in Arizona,[10] courts in California,[11] Colorado,[12] Connecticut,[13] Florida,[14]

---

[8] There was a trial on the merits in this declaratory judgment action. The judge found that the insured acted intentionally so as to cause the collision. The judge concluded that because an individual is presumed to intend the ordinary consequences of his voluntary actions, coverage was precluded. The court of appeals reversed, stating that such an inference does not address the effect of mental illness.

[9] See *Ruvolo, supra.*

[10] See *Globe American Casualty Co, supra,* and *Parkinson v Farmers Ins Co,* n 6 *supra* (recognizing the rule).

[11] See *Clemmer v Hartford Ins Co,* n 6 *supra; Congregation of Rodef Sholom v American Motorists Ins Co,* 91 Cal App 3d 690; 154 Cal Rptr 348 (1979).

[12] See *Mangus v Western Casualty & Surety Co,* n 6 *supra.*

[13] See *Rosa v Liberty Mut Ins Co,* n 6 *supra* (apparently applying Connecticut law).

[14] See *George v Stone, Arkwright-Boston Manufacturers Mut Ins Co*

Illinois,[15] Indiana,[16] Kentucky,[17] Louisiana,[18] Ohio,[19] and Washington[20] have similarly held that where the insured is insane, his actions may not be treated as intentional for the purposes of the exclusionary clause.[21]

IV

The Court of Appeals has divided on this issue.[22]

---

v Dunkel, and Northland Ins Co v Mautino, n 6 supra.

[15] See Aetna Casualty & Surety Co v Dichtl and Aetna Casualty & Surety Co v Freyer, n 6 supra (recognizing the rule).

[16] See West American Ins Co v McGhee, 530 NE2d 110 (Ind App, 1988).

[17] See Nationwide Mut Fire Ins Co v May, 860 F2d 219 (CA 6, 1988) (apparently applying Kentucky law).

[18] See von Dameck v St Paul Fire & Marine Ins Co, n 6 supra.

[19] See Nationwide Mut Fire Ins Co v Turner, 29 Ohio App 3d 73; 503 NE2d 212 (1986).

[20] See U S F & G Ins Co v Brannan, n 6 supra.

[21] See anno: Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured, 31 ALR4th 957.

> The insured must have the capacity to harbor a requisite intent in order for the insurer to be relieved of liability. Therefore, where the insured acts while insane, coverage will exist. [11 Couch, Insurance, 2d (rev ed), § 44:289, p 450.]

> A clause excluding "injury . . . caused intentionally" may not preclude coverage when an insured is incapable of forming an "intent" within the meaning of that term as used in the liability insurance provision, even though a recovery against the insured is based on an intentional tort. [Keeton & Widiss, Insurance Law, § 5.4(d)(7), pp 532-533, but acknowledging contrary case law.]

Similarly, see also 7A Appleman, Insurance Law & Practice, § 4501.16, p 291.

[22] Three decisions of the Court of Appeals concerning this issue were announced after the judge announced his decision in this case. Allstate Ins Co v Miller, 175 Mich App 515; 438 NW2d 638 (1989), and Mattson v Farmers Ins Exchange, 181 Mich App 419; 450 NW2d 54 (1989), both holding that where an insane person cannot form the intent to act, he has not acted "intentionally" for purposes of an exclusionary clause. And Transamerica Ins Corp of America v Boughton, 177 Mich App 253; 440 NW2d 922 (1989), holding that a person found not guilty of murder by reason of insanity may nevertheless be

The majority adopts the holding and reasoning of the panel in *Transamerica Ins Corp of America v Boughton,* 177 Mich App 253, 258-259; 440 NW2d 922 (1989),[23] that "the acts of a person deemed insane may be intentional within the meaning of an 'intentional and expected' acts exclusion."[24]

The majority also relies on the decision of the Supreme Court of Virginia in *Johnson v Ins Co of North America,* 232 Va 340; 350 SE2d 616 (1986).[25] The insured pleaded not guilty by reason of insanity of shooting and seriously injuring another person. The insurer argued that coverage was precluded under the exclusionary clause because the insured "knew" that he had a gun, that his victim was in front of him, and that he was pulling the trigger. The court found that the exclusion applied because the insured "intended" the act of shooting.[26]

V

In sum, I would hold that where an insane or

---

found to have intended to cause injury for the purposes of the exclusionary clause.

[23] *Transamerica Ins Corp* states that "to avoid liability through the exclusion for expected injury, the insurer must show that the injury was the natural, foreseeable, expected, and anticipatory result of an intentional act." *Id.* at 255-256. This objective standard, to determine whether the insured expected or intended injury, was *expressly rejected by this Court* in *DiCicco, supra,* which was decided the month after *Transamerica* was decided.

[24] The issue in *Transamerica Ins Corp* was whether "an intentional acts exclusion in a homeowner's policy precludes coverage for a person previously acquitted of criminal charges by reason of insanity . . . ." *Id.* at 257.

[25] The policy was an occurrence-based policy, with a separate exclusion for injuries "expected or intended from the standpoint of the insured."

[26] The court acknowledged a possible "blatant inconsistency" in finding a person criminally insane, yet denying him insurance coverage because he "intended his acts," but found the situation like others where an intentional act (killing in self-defense, or in war, or as an executioner) is excused from criminal sanctions, but is nevertheless "intentional." *Id.* at 348.

mentally ill person commits an act that results in injury, and—as stipulated here by the parties—did not have the mental capacity to appreciate the wrongfulness of his acts or form the requisite mental intent to commit murder or an assault, coverage under this exclusionary clause is not precluded, and that the insurer has the obligation to defend and indemnify the insured.

I would also hold that the facts of this case, which has not been tried, have not been sufficiently developed to determine, as a matter of law, whether Frost's mental incapacity would have prevented him from appreciating the wrongfulness of his acts or from forming the requisite mental intent to murder.

I would affirm the decision of the Court of Appeals, and remand the case to the circuit court for trial.