# STATE OF MICHIGAN

# COURT OF APPEALS

TITAN INSURANCE COMPANY,

      Plaintiff-Appellant,

v

AMERICAN COUNTRY INSURANCE
COMPANY,

      Defendant-Appellee,

and

SAFE ARRIVAL TRANSPORTATION and
SHONNISE WOODS,

      Defendants.

FOR PUBLICATION
September 15, 2015

No. 319342
Wayne Circuit Court
LC No. 12-014301-NF

---

BRONSON METHODIST HOSPITAL,

      Plaintiff-Appellee,

v

TITAN INSURANCE COMPANY,

      Defendant-Appellee.

and

AMERICAN COUNTRY INSURANCE
COMPANY,

      Defendant-Appellant.

No. 321598
Kalamazoo Circuit Court
LC No. 13-0463-AV

---

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

GLEICHER, J. (*concurring*).

-1-

These consolidated cases arise from two accidents involving two uninsured vans engaged in the business of transporting passengers. Defendant American Country Insurance Company insured other vehicles registered to the vans' owners. In both cases, plaintiff Titan Insurance Company was tapped by the assigned claims plan to handle the ensuing personal injury protection (PIP) claims. The lead opinion holds that pursuant to a single sentence of obiter dictum contained in a 1986 footnote, American Country stands in higher priority than Titan and therefore must adjust the claims. I concur, but write separately to suggest that the text of the governing statute merits renewed consideration by the Supreme Court.

This case turns on the formula governing priority. MCL 500.3114 addresses "the order in which various potentially liable insurers will be required to cover a claim for benefits." *Parks v Detoroit Auto Inter-Ins Exch*, 426 Mich 191, 201; 393 NW2d 833 (1986). The lead opinion holds that a subsection of the statute—MCL 500.3114(4)—controls the priority analysis in this case. According to subsection (4), the lead opinion declares, American Country must manage the claims because it insured other vehicles owned by or registered to the two transportation businesses. I agree that a footnote in *Parks* compels this result. See *Parks*, 426 Mich at 203 n 3. Were we writing on a clean slate, I would hold the priority rules set forth in MCL 500.3114 ambiguous when applied to PIP claims arising from commercial vehicle accidents such as the two involved here.

A trio of foundational principles animates Michigan's No-Fault Act, MCL 500.3101 *et seq*. Losses occasioned by accidental bodily injury arising from the operation of a motor vehicle are compensated through a system of PIP benefits, payable without regard to fault. The owner or registrant of a vehicle must purchase PIP coverage, which usually covers any losses sustained by the individual. MCL 500.3105. "[I]n a majority of cases, specific recognized losses suffered as a result of motor vehicle accidents will be compensated for by a person's own insurer." *Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 240; 293 NW2d 594 (1980).

The Legislature understood that despite the Act's coverage imperative, the no-fault system would necessarily have to accommodate the PIP needs of uninsured occupants of uninsured vehicles. This recognition yielded the contemporaneous enactment of a back-up plan, a priority system specifying a method for payment of PIP benefits when an injured person lacked no-fault coverage. MCL 500.3114 maps the course of such priority determinations. At the end of the priority road stands the insurer of last priority: the Michigan Assigned Claims Plan (MACP) (successor to the Michigan Assigned Claims Facility). MCL 500.3172(1). An injured person looks to the MACP for PIP coverage:

> if no [PIP] is applicable to the injury, no [PIP] applicable to the injury can be identified, the [PIP] applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable [PIP] applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. MCL 500.3172(1).

Before resorting to the MACP, the No-Fault Act contemplates that claimants will utilize MCL 500.3114's priority system to determine where to seek coverage among no-fault insurers.

MCL 500.3114(1) states the general rule that a PIP policy applies to "the person named in the policy, the person's spouse, and a relative of either domiciled in the same household[.]" Thus, an injured person usually turns to his or her own policy first, even if the injury arises from the operation of an uninsured vehicle.

Subsection (2) creates an exception to the rule set forth in subsection (1). An injured driver or occupant of a motor vehicle "operated in the business of transporting passengers" must look to "the insurer of the motor vehicle" for PIP benefits, and not his or her own insurer. This rule is subject to its own discrete exceptions, narrowing its reach. The statute states in its entirety:

> A person suffering accidental bodily injury while an operator or a passenger of a motor vehicle operated in the business of transporting passengers shall receive the [PIP] benefits to which the person is entitled *from the insurer of the motor vehicle*. This subsection does not apply to a passenger in the following, unless that passenger is not entitled to [PIP] benefits under any other policy:
>
> (a) A school bus, as defined by the department of education, providing transportation not prohibited by law.
>
> (b) A bus operated by a common carrier of passengers certified by the department of transportation.
>
> (c) A bus operating under a government sponsored transportation program.
>
> (d) A bus operated by or providing service to a nonprofit organization.
>
> (e) A taxicab insured as prescribed in [MCL 500.3101 or MCL 500.3102].
>
> (f) A bus operated by a canoe or other watercraft, bicycle, or horse livery used only to transport passengers to or from a destination point. [MCL 500.3114(2) (emphasis added).]

This Court has thoughtfully summarized that MCL 500.3114(2) and its exceptions

> relate to "commercial" situations. It was apparently the intent of the Legislature to place the burden of providing no-fault benefits on the insurers of these motor vehicles, rather than on the insurers of the injured individual. This scheme allows for predictability; coverage in the "commercial" setting will not depend on whether the injured individual is covered under another policy. A company issuing insurance covering a motor vehicle to be used in a (2) . . . situation will know in advance the scope of the risk it is insuring. The benefits will be speedily paid without requiring a suit to determine which of the two companies will pay what is admittedly due by one of them. [*State Farm Mut Auto Ins Co v Sentry Ins*, 91 Mich App 109, 114-115; 283 NW2d 661 (1979).]

MCL 500.3114(2) plainly provides that (with carefully delineated exceptions) when a vehicle used in the commercial transportation of customers is involved in an injury-producing

-3-

accident, the insurer of the commercial vehicle provides PIP coverage. The Legislature omitted from this subsection any priority fall-back rules, despite that the Legislature undoubtedly foresaw that injuries would arise from accidents involving *uninsured* commercial vehicles. Although the Legislature took pains to carve out discrete exceptions to subsection (2), it notably omitted mention of or reference to a back-up plan governing the foreseeable risk that an owner of a commercial vehicle in the business of transporting passengers would fail to insure it.[1]

In this sense, subsection (2) could logically be interpreted to function in a manner akin to a light switch. When turned on, coverage responsibility falls to the vehicle's insurer. When turned off, there is no coverage, which means that coverage automatically defaults to the insurer of last resort—the assigned claims plan. The Legislature's omission of an alternative priority scheme in the subsection specifically addressing vehicles operated in the business of transporting passengers could mean that the Legislature did not intend to place responsibility on a specific insurer that had not undertaken the risk of insuring the commercial vehicle. After all, "[i]t is impossible to hold an insurance company liable for a risk it did not assume." *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992).[2]

Alternatively, and as the lead opinion holds, subsection (4) serves as the priority road-map for vehicles operated in the business of transporting passengers, even though such vehicles are not mentioned in that subsection and appear to be specifically *exempted* from its reach:

> *Except as provided in subsections (1) to (3),* a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> > (a) The insurer of the owner or registrant of the vehicle occupied.
> >
> > (b) The insurer of the operator of the vehicle occupied. [MCL 500.3114(4) (emphasis added).]

---

[1] The exceptions for school buses, taxicabs, and other specifically identified commercial vehicles place the responsibility for PIP coverage on the passenger's no-fault carrier, "unless that passenger is not entitled to [PIP] benefits under any other policy." MCL 500.3114(2). Thus, the exceptions reinstate the general rule that one looks to one's own insurer for PIP coverage. The Legislature decreed that the insurers of a relatively small subset of commercial vehicles, such as the two vans involved in this case, would be liable for PIP benefits regardless of whether the injured person owned her own no-fault policy.

[2] The [MACP] serves as an exception to this rule. The plan is a safety net, of sorts, designed to supply coverage for injured and uninsured automobile accident victims. The plan shifts the costs of care from the taxpayers or medical care providers, placing it on the insurers who write most of the no-fault coverage policies in this state.

What does the phrase "[e]xcept as provided in subsections (1) to (3)" mean in the context of subsection (4)? It could mean that "except where there is coverage, as set forth in subsection (2)," the rules of subsection (4) apply. The lead opinion affords this meaning to the "except" clause, and I concur that this is a rational reading of MCL 500.3114(4). Moreover, the Supreme Court's footnote in *Parks* seems to dictate this result, as it states: "Those injured while *occupants* of motor vehicles must look to the rules provided in subsections 1, 2, and 3 before applying the priorities listed in subsection 4." *Parks*, 426 Mich at 203 n 3.[3]

Application of that rule in this case means that American Country is responsible for the PIP claims at issue, despite that American Country never agreed to insure the commercial vehicles involved in the accidents and never received a single dollar in premium payments for coverage of those vehicles. If MCL 500.3114(4) governs this priority dispute, the law has created a contract that did not exist, and holds American Country liable for risks it never assumed.

I submit that an alternate interpretation is equally valid: subsection (2) operates as a stand-alone provision because it deals with a subset of vehicles presenting unique considerations. Owners of vehicles used to transport passengers are required to purchase PIP policies from no-fault insurers. Those no-fault insurers are required to pay PIP benefits to drivers and passengers of such insured commercial vehicles. Here, the vehicles were uninsured. *Parks* dictates that we burden American Country with coverage responsibility because American Country insured *other* vehicles owned or registered by the same (lawbreaking) businesses, rather than spreading the risk to all insurers writing no-fault policies in Michigan (as ordinarily occurs when the MACP serves as the default). American Country bears responsibility despite that it had no opportunity to underwrite the risks it undertook by insuring some (or perhaps even one) vehicle in a larger fleet.

Perhaps this is what the Legislature intended. But given the plain language of subsections (2) and (4), I find it equally plausible that the Legislature envisioned that if a commercial transportation service owner failed to obtain PIP coverage for some vehicles in his or her fleet, the risk would be spread to all insurers subject to assigned claims obligations, rather than being borne solely by the innocent insurer for the remaining vehicles.

/s/ Elizabeth L. Gleicher

---

[3] *Parks* involved a claim governed by MCL 500.3114(3), and not subsection (2).