WOZNIAK v. JOHN HANCOCK MUTUAL LIFE INS. CO.

1. INSURANCE—CONSTRUCTION OF POLICIES.
   An insurance policy is a contract and should be interpreted according to its plain meaning.

2. SAME—AMBIGUITIES—CONSTRUCTION MOST FAVORABLE TO INSURED.
   Provisions of an insurance policy which are uncertain or ambiguous or whose meaning is not clear should be given such interpretation or construction as is most favorable to the insured.

3. SAME—CONSTRUCTION OF POLICIES.
   Rule that ambiguous or uncertain terms of an insurance policy should be construed most favorably to insured does not require that the plain meaning of plain words should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefiting the insured.

4. HOMICIDE—DEFINITION.
   In law, the word "homicide" has reference to the unlawful killing of one human being by another.

5. INSURANCE—DOUBLE LIABILITY FOR ACCIDENTAL DEATH—HOMICIDE.
   Insured who was murdered incident to robbery of a gasoline station at which he was an attendant *held*, victim of a homicide within exception to clause imposing double liability for accidental death.

Appeal from Wayne; Toms (Robert M.), J. Submitted April 5, 1939. (Docket No. 13, Calendar No. 40,389.) Decided June 5, 1939.

Action by Mary Wozniak against John Hancock Mutual Life Insurance Company of Boston, Massachusetts, a foreign corporation, for benefits due under a life insurance policy. From judgment for

plaintiff in an amount claimed to be insufficient, she appeals. Affirmed.

*Ernest Nichols Papps,* for plaintiff.

*Bulkley, Ledyard, Dickinson & Wright (William A. Walker,* of counsel), for defendant.

McALLISTER, J.    John Wozniak, a gasoline station attendant, was insured in a policy of life insurance of defendant company in the amount of $1,000. The policy also provided for an additional indemnity of $1,000 in case of death resulting from accidental injury. The latter provision was subject to the following exception:

"This provision for benefit shall not apply if the death of the insured results directly or indirectly from disease or bodily or mental infirmity or from the inhaling of any kind of gas, whether voluntary or involuntary, or from self-destruction, sane or insane, or from homicide or from any violation of law by the insured."

On the night of December 15, 1937, an unidentified man was observed leaving the filling station where Wozniak was employed and immediately thereafter Wozniak was seen at the door of his place of business with his face covered with blood. He was calling for help. He then staggered and fell, and after crawling a few feet outside the door of the gas station he collapsed. He was rushed to the hospital where he was pronounced dead on arrival. Immediately after his death, it was found that the drawer of the cash register at the gas station was open. It contained only some small change. In the rear room of the station were found two discharged .32 caliber automatic cartridges and two small metal clips. No firearm was, however, found but a bullet was on the

floor and another bullet was lodged in the door of the room about seven feet above the floor. The cap and eyeglasses of deceased were found on the floor, where there was a pool of blood; and there were evidences of a struggle. An autopsy was performed on the body of the insured at the Wayne county morgue on December 16, 1937, and the coroner's report of autopsy revealed that there were three lacerating wounds in the left frontal region of the scalp and in the posterior region of the scalp, in addition to bullet wounds through the abdomen. The cause of death given by the doctor who performed the autopsy was internal hemorrhage following bullet wounds through the abdomen.

Mary Wozniak, the widow and beneficiary named in the insurance policy, brought suit claiming that she was entitled to the double indemnity for accidental death, and contending that there was no actual proof of homicide. It was also contended that the word "homicide" as used in the policy, is technical, of doubtful meaning and ambiguous, and that, therefore, the interpretation thereof must be considered most strongly against the insurance company. The case was submitted to the trial court without a jury, and after trial a judgment was entered for $1,000, but denying recovery on the provision of double indemnity. The opinion of the trial court, which we herewith adopt, ably summarizes the case:

"The only fair inference which can be drawn from the facts as stipulated is, that the insured was murdered in the perpetration of a robbery of the gas station which he was attending. All of the facts lead to the conclusion that in defending his property or that of his employer from the assault of a robber, he was shot and died from the gunshot wound. The court would not hesitate, under this inference, to find that

the deceased came to his death solely by external, violent and accidental means. But a further problem is presented by the exception in the policy 'or from homicide.'

"An insurance policy is a contract and should be interpreted according to its plain meaning. The court is mindful of the rule of law that where the provisions of an insurance policy are uncertain or ambiguous, or the meaning is not clear, that those terms should be given such interpretation or construction as is most favorable to the insured. This rule does not mean, however, that the plain meaning of plain words should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefiting the insured. We are then confronted with the determination of the meaning of the phrase as used in the contract of insurance 'or from homicide.'

"There is nothing ambiguous or uncertain about the legal meaning of the word 'homicide.' Its connotations are ancient and its meaning has remained unchanged for centuries; it is one of the most definitely circumscribed words in the English law. It has reference to the unlawful killing of one human being by another, and although there are various grades of homicide and it may be accomplished in any number of ways, the meaning of the word itself is well recognized and definite. Using the definition of homicide recognized in the law and superimposing it upon the facts and the inescapable inference to be drawn from those facts, the court is confronted by the necessity of determining whether or not the deceased came to his death from homicide.

"It would seem unnecessary to resort to adjudicated authorities to answer this question, but fortunately the exact question involving the identical policy and even the same insurance company was before the court of appeals of Kentucky in the case of *John Hancock Mutual Life Ins. Co.* v. *Tabb,* 273

Ky. 649 (117 S. W. [2d] 587). In that case the insured came to his death by reason of his skull being crushed by an unknown person, after the perpetration of a robbery. In determining the meaning and application of the term 'or from homicide' in the policy the court said: 'It seems to us that it was shown beyond a doubt that Mr. Tabb's death was the result of a felonious killing; that it was caused by one intent upon robbery, which, under elementary law, is murder, and that such case was explicitly excluded from the coverage of the insurance policy. The terms of the contract must measure the rights of the parties. It follows, therefore, that the peremptory instruction should have been given to the jury to find a verdict for the defendant insurance company.'

"It must be assumed that the deceased purchased the kind of a contract which he selected and for which he paid. It is probable that he could have secured broader protection from another contract at increased cost to himself, but he chose not to do so. In any event, the obvious and plain construction of the language of this contract which he did buy leads to the undoubted conclusion that it was agreed between himself and the insurance company that his death in the manner in which it was sustained was an excepted risk.

"A judgment for $1,000, the face of the policy without benefit of the additional indemnity for accidental death, plus $46.50 interest, will be entered, with costs in the sum of $24."

Judgment affirmed, with costs to defendant.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.