Shirley Ann **FEHRING**, Appellee,

v.

**UNIVERSAL FIDELITY LIFE
INSURANCE COMPANY,**
Appellant.

**No. 60180.**

Supreme Court of Oklahoma.

July 1, 1986.

Cocke & Sullivan by Patrick N. Sullivan, Lawton, for appellee.

Eddie Y. Newcombe, Lawton, for appellant.

LAVENDER, Justice:

Appellee, Shirley Ann Fehring, commenced this action in the trial court seeking to recover the benefits of an additional accidental death and dismemberment supplement issued by appellant Universal Fidelity Life Insurance Company covering appellee's husband Bernard A. Fehring. Appellant contended that the death of Bernard A. Fehring had occurred under circumstances for which coverage was excluded by language in the supplemental policy.

This matter was tried to the trial court. As stated by the trial court, the parties stipulated that:

[T]he Plaintiff's deceased husband Bernard A. Fehring, was found in a farm field near Sterling, Oklahoma on October 17, 1979, laying dead on the ground beside his tractor; that the cause of death was a gunshot wound to the head; that no weapons, shells, or any other evidence of foul play was uncovered at or near the scene of death; that said decedent's life was insured under Defendant's policy # 5–100–26797, which policy was in full force and effect at the time of death.

The supplemental policy issued by appellant provided, in pertinent part:

UNIVERSAL FIDELITY LIFE INSURANCE COMPANY agrees to pay, subject to the provisions, conditions and limitations herein contained, the Additional Death Benefits above provided if the death of the Insured shall result directly and independently of all other causes from bodily injuries sustained while the policy and this supplement are in full force and effected solely through external, violent and accidental means and evidenced by a visible contusion or wound on the exterior of the body (except in case of drowning or of internal injuries revealed by an autopsy); provided that such death shall occur within ninety days from the date of accident.

Indemnity under this supplement is not payable for any loss which results from or is contributed to by:

(a) Self destruction, sane or insane, or any attempt thereat.

(b) Descent in a submarine.

(c) Bodily injuries sustained while participating in or attempting to commit an assault or a felony.

(d) Bodily injuries sustained as a result of war, riot or insurrection or as a result of service in the military, naval or air forces of any country at war. War as used herein means declared or undeclared war or any conflict between the armed forces of countries, or governments, or of any coalition of countries or governments through an international organization or otherwise.

(e) Homicide, intentional or unintentional.

(f) Disease, or bodily or mental infirmity.

(g) Travel or flight in, or descent from, any aircraft of which the Insured is a pilot, officer or member of the crew or in which he is giving or receiving any kind of training or instruction or has any duties aboard the aircraft or requiring descent therefrom, or is in training as a member of the military, naval or air forces of any country.

(h) Any drug, poison, gas, or fumes voluntarily or involuntarily, accidentally or otherwise taken, administered, absorbed or inhaled.

Appellant argued that exclusion (e) applied to the circumstances of the death of Bernard A. Fehring and precluded appellee's claim for the additional benefits. The trial court found that the use of the term "homicide" in the exclusionary clause was ambiguous and should be construed against appellant, and further found that the construction urged by appellant would be unconscionable. The trial court entered judgment for appellee and this appeal was brought from that decision.

The Court of Appeals, Division I, to which this case was originally assigned, reversed the trial court's judgment. The Court of Appeals found that the use of the term "homicide" was not ambiguous, and that, under the guidelines regarding unconscionability set out in *Barnes v. Helfenbein*,[1] the insurance contract was not rendered unconscionable by the inclusion of the exclusionary clause. Appellee petitioned for certiorari to obtain review of the Court of Appeal's decision. We have previously granted the requested writ.

The Court of Appeals, in reaching the decision regarding the clarity of the defini-

1. 548 P.2d 1014 (Okla.1976).

tion of "homicide" accepted the argument put forth by appellant to the trial court and on appeal. Appellant had argued that the definition of homicide was quite clear as reflected both by standard dictionary definitions[2] and under Oklahoma statutes.[3] These sources define homicide as "a killing of one human being by another."[4] Appellant contended that this definition, coupled with the qualifying language of the clause, "intentional or unintentional", made the exclusion applicable to any case in which the death of the insured occurred as a result of the agency of another human being, whether that agency was accidental or culpable. The Court of Appeals found that the evidence before the trial court clearly established that the death of Bernard A. Fehring was the result of the actions of another person and thus within the exclusion.

Although literal interpretation of the clause would support the result reached by the Court of Appeals, the words of an insurance contract must be accepted in their plain, ordinary and popular sense.[5] If there is any doubt about the construction of the wording of the exclusion the exclusion must be construed strictly against the insurer.[6] In addressing the meaning of the use of the term "homicide" in a similar exclusionary clause the Supreme Court of Michigan adopted the following statement:[7]

"There is nothing ambiguous or uncertain about the legal meaning of the word 'homicide.' Its connotations are ancient and its meaning has remained unchanged for centuries; it is one of the most definitely circumscribed words in the English law. It has reference to the unlawful killing of one human being by another, and although there are various grades of homicide and it may be accomplished in any number of ways, the meaning of the word itself is well recognized and definite. . . ."

This brings us to the crux of the issue before us. As recognized by the Supreme Court of Michigan the term "homicide", by ancient usage, has a popular connotation of unlawful action. The interpretation urged by appellant, and accepted by the Court of Appeals, ignores this connotation and would apply the exclusion even to situations where death is the result of non-culpable actions of another person.

Appellant, in its arguments, relies heavily on the case of *Great Southern Life Ins. Co. v. Akins.*[8] That case involved an exclusionary clause with the same "intentional or unintentional" language used to modify the term "homicide". In *Akins* the insured had gotten into an argument with another man. During the course of the argument the other man produced a pistol. The insured was killed in a struggle over the pistol when it discharged. The Texas Court of Civil Appeals, noting statutory definitions of excusable homicide which included death caused by accident or misfortune by another in the prosecution of a lawful object by lawful means,[9] found that the exclusion applied to the case whether the pistol was discharged accidentally or intentionally. Since the facts of the case clearly establish that the incident would have constituted the crime of assault by the party producing the pistol under Oklahoma statutes,[10] we must consider the language of that case regarding excusable homicide to be mere dicta. We do not find

**2.** See e.g. *Webster's New Collegiate Dictionary* 543 (1979); *Black's Law Dictionary* 661 (5th ed. 1979).

**3.** 21 O.S. 1981 § 691.

**4.** *Webster's New Collegiate Dictionary,* supra.

**5.** *Wiley v. Travelers Ins. Co.,* 534 P.2d 1293 (Okla.1974).

**6.** *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907 (Okla.1982); *Great Northern Life Ins. Co. v. Cole,* 207 Okla. 171, 248 P.2d 608 (1952).

**7.** *Wozniak v. John Hancock Mut. Life Ins. Co.,* 288 Mich. 612, 286 N.W. 99 (1939).

**8.** 105 S.W.2d 902 (Tex.Civ.App.1937).

**9.** The parallel provisions under Oklahoma law are contained at 21 O.S. 1981 § 731(1).

**10.** 21 O.S. 1981 §§ 641, 643(3).

the result in that case to be contrary to a requirement that the use of the term "homicide" in an exclusionary clause includes the connotation that the act resulting in death be unlawful.

Similarly, those cases from other jurisdictions[11] which, while dealing with an exclusion for death resulting from "homicide" without further modification have limited the operation to intentional acts, have indicated that the exclusion could be extended to unintentional acts by explicit language are not contrary to the result we reach here today. While those cases indicated that a "homicide" exclusion could be extended to unintentional acts by proper language, we find nothing to support an argument that the element of unlawfulness could be removed by the mere insertion of the word unintentional.

We thus hold that the exclusionary clause used in the policy in question, "homicide, intentional or unintentional", bears with it the connotative requirement that the act, whether intentional or unintentional, which results in the death of the insured, be culpable and thus unlawful in nature. Appellant here bore the burden of proving that the insured's death came within the scope of the exclusionary clauses.[12] The evidence before the trial court would as easily support a finding that the death of Bernard A. Fehring was the result of a non-culpable accident as a finding that it was caused by culpable negligence or by an intentional act. We find that this was not sufficient to sustain appellant's burden, and the trial court's entry of judgment for appellee was proper.[13]

While the killing of one human being by another is of course homicide, the question is whether the exclusion here covers what the facts here reveal—at most the *negligent* killing of the insured by a third party. If we are to treat the term "unintentional homicide" as not requiring an element of unlawfulness but one which is satisfied by simply a negligent killing then we have by judicial decree changed the contract of the parties and treated exclusion (e) as if it read: No coverage for accidental death is here provided if the death results from the negligent act of another.

We decline, at this time, to address the question of the unconscionability of an exclusionary clause purporting to exclude from the coverage of an accidental death policy all accidental deaths resulting from the actions of another person.

The opinion of the Court of Appeals, Division I, in this matter is VACATED. The judgment of the trial court is AFFIRMED.

SIMMS, C.J., and HODGES, WILSON and KAUGER, JJ., concur.

SUMMERS, HARGRAVE and OPALA, JJ., dissent.

DOOLIN, V.C.J., disqualified.

SUMMERS, Justice, dissenting:

The death of a person by a gunshot wound to the head, in the absence of circumstances indicating suicide, suggests that the death was a homicide. Since the insurance policy provides that it pays only the basic death benefits (and not the double indemnity) if the death is caused by "homicide, intentional or unintentional", I must conclude that the defendant insurance company has made a prima facie showing of homicide in defending the widow's suit for double indemnity. The majority has avoided this result by adopting its own definition of homicide.

Our legislature has provided us with the following definition at 21 O.S. 1981 § 691: "Homicide is the killing of one human being by another." Section 692 provides that the homicide may be either murder, manslaughter, excusable or justifiable. Section

---

**11.** See e.g. *Hicks v. Durham Life Ins. Co.*, 23 N.C.App. 725, 209 S.E.2d 846 (1974); *Jefferson Standard Life Ins. Co. v. Myers*, 284 S.W. 216 (Tex.Com.App.1926).

**12.** *General Accident, Fire & Life Assurance Corp., v. Hymes*, 77 Okla. 20, 185 P. 1085 (1919).

**13.** See *Russell v. Flanagan*, 544 P.2d 510 (Okla. 1975).

731 tells us that homicide by accident or misfortune is excusable homicide.

These definitions are not peculiar to Oklahoma. *Black's Law Dictionary*, 661 (rev. 5th Ed. 1979) defines homicide as: "the killing of one human being by the act, procurement, or omission of another." *Black's* further shows us that *homicide per infortunium* is the latin for

> "[H]omicide by misfortune, or accidental homicide; as where a man doing a lawful act, without any intention of hurt, unfortunately kills another; a species of excusable homicide. 4 *Bl.Comm.* 182; 4 *Steph.Comm.* 101." (Id at 661)

The majority quotes from and apparently relies on *Wozniak v. John Hancock*, 288 Mich. 612, 286 N.W. 99 (1939) to the effect that homicide's "meaning has remained unchanged for centuries", that "it is one of the most definitely circumscribed words in the English law", and that it refers to the "unlawful" killing of one human being by another. The Michigan courts' statement is, at the least, unique. It contradicts not only *Black's*, supra, but the following authorities defining homicide:

*Webster's Ninth New Collegiate Dictionary* (1983):

"a killing of one human being by another",

*40 Am.Jur.2d Homicide § 1:*

"the term homicide is generic, and embraces every mode by which the life of one person is taken by another".

*Oram's Dictionary of the Law* (1983), Publishing Co.

"Killing another person (not necessarily a crime)".

*Griffis Law Dictionary* (1975):

"Any killing of a human being; it does not necessarily constitute a crime".

*Cochran's Law Lexicon*, Gilmer's Revision 5th Edition (1973);

"Destroying the life of a human being. It may be (a) excusable as when committed by accident, and without any intent to injure...."

*Oxford Companion to Law* (1980):

"The generic term for the causing, or accelerating, the death of a human being by another human being.

*Radin Law Dictionary* 2nd Ed. 1970:

"Any killing of a human being, accidental or intentional, legally justified or not."

*Ballentine's Law Dictionary* 3rd Ed. 1969:

"The killing of a human being under any circumstances, by the act, agency or ommission of another." [1]

If the policy's homicide exclusion was ambiguous it should be construed against the company. *Timmons v. Royal Globe*, 653 P.2d 907 (Okl.1982); *Hicks v. Durham Life*, 23 N.C.App. 725, 209 S.E.2d 846 (1974). But it excluded the double coverage for death from "homicide, intentional or unintentional." By its very language it appears to have intended to exclude death caused accidentally, unintentionally, or unfortunately by the act or omission of another person. Perceiving no ambiguity I am unwilling to rewrite the policy to require a showing that the excluded homicide be culpable or unlawful. The parties' use of the word "unintentional" precludes that interpretation. Therefore, I respectfully dissent.

I am authorized to state that Justices Hargrave and Opala share the views herein expressed.

---

**1.** For additional definitions in accord see: *Shorter Oxford English Dictionary* 2nd Ed. (1936); *The Guide to American Law, Everyone's Legal Encyclopedia* (1983); *Random House Dictionary of the English Language* (1967); *Stroud's Judicial Dictionary*, 3rd Ed. (1952); *Bouvier's Law Dictionary*, 3rd Revision (1914); *American Heritage Dictionary of the English Language* (1969); *The Plain Language Law Dictionary* (1981); *Running Press Dictionary of the Law*, 1976; *Cyclopedic Law Dictionary* 2nd Edition (1922); *Funk & Wagnalls New Comprehensive Dictionary* (1982).