**PARAMETER DRIVEN SOFTWARE, INC., Plaintiff,**

v.

**MASSACHUSETTS BAY INSURANCE COMPANY, Defendant.**

No. 92–CV–70680–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 10, 1993.

Mark A. Cantor, Mick A. Nylander, Southfield, MI, for plaintiff.

James T. Mellon, Anne Kamego, Troy, MI, for defendant.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

The dispute in this case arises out of a contention by the Plaintiff, Parameter Driven Software, Inc. (Parameter), that the Defendant, Massachusetts Bay Insurance Company (Massachusetts Bay), breached a contractual obligation to provide it with legal representation, as well as a defense, in two lawsuits involving Personnel Data Systems, Inc. (Personnel).

1. The relevant allegations from Personnel's Complaint are:

> ¶ 1. This is an action for false designation of origin under the federal Trademark Act ... and for unfair competition, arising from the use, by Defendant, of Plaintiff's trademark and trade name PDS....
> ¶ 23. Defendant's use of PDS, either alone or in combination with other elements, in connecting with the advertising or sale of computer program business applications, constitutes a false designation of origin, within the meaning of Section 43(a) of the Trademark Act (15 U.S.C. § 1125(a)). Defendant is therefore liable to Plaintiff for false designation of origin....
> ¶ 25. Defendant's use of PDS, either alone or in combination with other elements, in connecting with the advertising or sale of computer program business applications, constitutes unfair competition. Defendant is therefore liable to Plaintiff for unfair competition....

(Personnel's Complaint at 1, 6.)

2. The relevant allegations from Personnel's Amended Complaint are:

I

The underlying litigation relates to two trademarks, "PDS" and "PDS and Design", both of which had been used by Parameter in connection with its computer programs for business applications. Personnel challenged Parameter's use of "PDS" and "PDS and Design," and filed a petition in 1990 with the Trademark Trial and Appeal Board (Board) in an effort to preclude its further use of the challenged trademarks. On September 13, 1991, the Board agreed with Personnel and cancelled Parameter's right to use the two trademarks.

Two federal lawsuits immediately followed. The first case was initiated on October 23, 1991 by Personnel who sued Parameter in the Eastern District of Pennsylvania for false designation of origin, unfair competition, common law trademark infringement and trade name infringement.[1] Shortly thereafter, Parameter filed a lawsuit against Personnel in the Eastern District of Michigan, seeking, *inter alia*, a declaratory judgment that it had concurrent rights with Parameter to use the trademarks. Personnel counterclaimed with accusations that paralleled its claims in the Eastern District of Pennsylvania (to wit, false designation of origin, common law trademark and trade name infringement and unfair competition).[2] These two

> ¶ 38. This is a counterclaim for false designation of origin under the federal Trademark Act ... and for unfair competition, arising from the use, by Parameter Driven Software, Inc. ("Parameter"), of Personnel's trademark and trade name PDS....
> ¶ 54. Parameter's use of PDS, either alone or in combination with other elements, in connecting with the advertising or sale of computer program business applications, constitutes a false designation of origin, within the meaning of Section 43(a) of the Trademark Act (15 U.S.C. § 1125(a)). Personnel is entitled to an injunction preventing Parameter from using PDS in connection with the advertising or sale of computer programs for business applications.
> ¶ 56. Parameter's use of PDS, either alone or in combination with other elements, in connection with the advertising or sale of computer programs for business applications, constitutes unfair competition. Personnel is entitled to an injunction barring such further acts of unfair competition.

(Personnel's Amended Complaint at 5, 9.)

cases have been consolidated in this Court for pre-trial and trial purposes.

On November 4, 1991, Massachusetts Bay was formally requested by Parameter to defend its interests against Personnel's claims in the two pending lawsuits. On January 15, 1992, Massachusetts Bay rejected Parameter's request and declined to defend or pay any of the related attorney fees and costs. Approximately one month later (February 10, 1992), Parameter sued Massachusetts Bay on the basis of an alleged breach of contract.[3] On October 26, 1992, the parties filed motions for summary judgment that are now before this Court for a final decision.[4]

## II

Parameter claims that it is entitled to a summary judgment because (1) coverage for an "advertising offense" under the parties' insurance contract includes an unfair competition claim, and (2) Massachusetts Bay acted in bad faith when it refused to defend or indemnify the lawsuits.

Parameter submits that (a) the clear language of the policy defines an "advertising offense" to include unfair competition, (b) a claim for unfair competition is separate from a claim for trademark infringement, and (c) Personnel's allegation of unfair competition is not limited to an offense "arising out of infringement of trademark, service mark or trade name."

Moreover, Parameter maintains that Massachusetts Bay (1) failed to adequately investigate the underlying issues which form the basis of Personnel's complaint and counterclaim, (2) employed a claims adjuster, Susan Pearl–Geisling, who (a) has no legal training, (b) is not a paralegal, (c) did not have any experience in handling the kinds of claims for coverage that have been asserted in this lawsuit, and (d) never considered the property damage claim or the applicable statutes in her evaluation process, and (3) the notes of Richard Huebler, a casualty consultant for Massachusetts Bay, acknowledged coverage

---

3. The five relevant insurance contract provisions at issue in this matter are:
ADVERTISING OFFENSE LIABILITY—The company will pay on behalf of the insured all sums which the insured shall become legally obligated to apply as damages because of advertising offense sustained by any person or organization and arising out of the conduct of the named insured's business, if the offense is committed during the policy period within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury even if any of the allegations of the suit are groundless, false or fraudulent....
Advertising Offense Liability insurance does not apply:
5. to advertising offense arising out of ...
   b. infringement of trademark, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale of advertised....
(Parameter's Brief, Exhibit E at 2–4.)
The contract defines an advertising offense as:
[an] injury occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition or infringement of copyright, title, or slogan.
*Id.* at 2–5.
The third applicable provision relates to property damage liability. The contract provides that Massachusetts Bay:

will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage ... caused by an occurrence to which this insurance applies.
*Id.* at 2–2.
Property damage is defined as:
(a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
*Id.* at 2–6.
Finally, an occurrence is defined as:
an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured and with respect to personal injury, the commission of an offense, or a series of similar or related offenses.
(Parameter's Brief, Exhibit E at 2–7.)

4. Following the completion of oral arguments relating to the summary judgment issues, this Court directed the counsel for each party to submit supplemental briefs that would focus upon whether coverage was required for the alleged violation under 15 U.S.C. § 1125(a). (Order, November 30, 1992.)

for the unfair competition and false designation of origin claims.

In its opposition papers, Massachusetts Bay contends that (1) Personnel's allegations do not trigger any coverage under the property damage or the advertising offense clauses of the contested insurance policy, (2) it did not act in bad faith in rejecting Parameter's request, and (3) even if an act of bad faith could be established, it does not create an independent tort action under Michigan law.

Specifically, Massachusetts Bay claims that no liability exists under the property damage clause, inasmuch as (1) Personnel does not make any claim for damage to its tangible property and seeks recovery only for the economic losses that it allegedly sustained, and (2) no "occurrence," as defined in the policy, can be established by Parameter.

Next, Massachusetts Bay avers that Personnel's alleged unfair competition and 15 U.S.C. § 1125 claims are based upon the use of the trademark and trade name. In support of this theory, Massachusetts Bay attaches the affidavit of Personnel's attorney, William H. Eilberg, who states that his client's claims for unfair competition arise solely out of Parameter's alleged infringement of the trademark and trade name. It argues that, without the trademark infringement, no claim for unfair competition would exist, and, as such, the exclusion provisions within the contract apply and no duty to defend exists under the "advertising offense" clause.[5]

In addition, Massachusetts Bay contends that the duty to defend does not encompass an obligation to pay the fees and costs of a lawsuit that has been initiated by an insured against a third party. Because there is no duty to defend, Massachusetts Bay submits that Parameter has failed to provide support for its claim of bad faith. Furthermore, Massachusetts Bay denies that it failed to thoroughly and reasonably investigate Parameter's claim because (1) an adjuster is not required to look at a manual unless a specific question exists, (2) Pearl–Geisling reviewed the property damage provisions and correct-

ly determined that no coverage existed, and (3) Parameter fails to point to the section within Huebler's notes which specifically declare that there is no coverage under the policy because all of Personnel's allegations arise out of alleged use of the trademark.

### III

Under Rule 56 of the Federal Rules of Civil Procedure, a summary judgment is to be entered if the moving party demonstrates that there is no genuine issue as to any material fact, and if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court is authorized to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. *Boyd v. Ford Motor Company,* 948 F.2d 283 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). The failure of a party to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial…." will mandate the entry of summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986).

Fed.R.Civ.P. 56(e) provides that an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts which demonstrate that there is a genuine issue for trial. If he does not respond, a summary judgment, if appropriate, shall be entered against him. Fed.R.Civ.P. 56(e); *Celotex Corp.,* 477 U.S. at 321, n. 3, 106 S.Ct. at 2552, n. 3.

With respect to the interpretation of a contract, the Michigan Supreme Court has declared that:

> [a]n insurance policy is a contract and should be interpreted according to its plain

---

5. For the purpose of these motions for summary judgment, Massachusetts Bay concedes that unfair competition can involve more than trade-

mark infringement, but argues that it does not in this case.

meaning. The court is mindful of the rule of law that where the provisions of an insurance policy are uncertain or ambiguous, or the meaning is not clear, that those terms should be given such interpretation or construction as is most favorable to the insured. This rule does not mean, however, that the plain meaning of plain words should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefiting the insured.

*Wozniak v. John Hancock Mutual Life Ins. Co.*, 288 Mich. 612, 615, 286 N.W. 99 (1939); *See also Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 208, n. 8, 476 N.W.2d 392 (1991); *Huron Bowl, Inc. v. Security Ins. Co.*, 14 Mich.App. 62, 65, 165 N.W.2d 265 (1968) (contract language should be given its natural and ordinary meaning).

### A. Coverage under Property Damage Liability Clause

The parties disagree as to whether a claim for coverage was filed by Parameter pursuant to the property damage liability provisions with their contract. Pointing to the declaration of its attorney, Jeffrey Szuma, who asserted that his client never relinquished its claim for coverage under the property damage clause, Parameter insists that it did file a claim with Massachusetts Bay in accordance with the provisions of the contract. However, in its opposition papers, Massachusetts Bay offers Pearl–Geisling's notes and deposition testimony in support of the proposition that Parameter did not seek coverage under this provision.

■ Balancing the evidence, it is apparent that there exists a genuine issue of a material fact as to whether Parameter sought coverage under this provision. However, even if Parameter did seek such coverage, none would have been required.

Under the provisions of the subject insurance policy, property liability coverage only extends to damage to tangible property that

has been caused by an accident. As evidenced by the record in this cause, Personnel only seeks economic damages and injunctive relief.[6] Therefore, because Personnel does not claim to have sustained the loss of tangible property as the result of an accident, Massachusetts Bay is not required to provide coverage.

Nevertheless, Parameter maintains that it will suffer tangible property damage if Personnel's lawsuit is successful because it will "be forced to withdraw numerous advertising, promotional and packaging materials ... [and] may have to destroy their current stock of product and inventory containing the mark "PDS" and "PDS and Design." (Parameter's Response at 7.) However, these are not kind of losses that Parameter will become legally obligated to pay under Personnel's theory of the case. The contract provides coverage only for property damages "which the insured shall become legally obligated to pay." (Parameter's Brief, Exhibit E at 2–2.)

In addition, the property damage coverage does not apply to damage to (a) "the named insured's products arising out of such products or any part of such products," or (b) "property ... owned or occupied by or rented to the insured." *Id.* These exclusions in conjunction with the plain language of the contract mandate the conclusion that no coverage exists under the property damage liability provision.

Therefore, the Court will grant Massachusetts Bay's Motion for Summary Judgment on this claim.

### B. Coverage under the Advertising Offense Liability Clause

■ In the present case, insurance coverage is not provided for an advertising offense that ultimately arises out of an infringement of trademark. (Parameter's Brief, Exhibit E at 2–4.) As defined by the contract, an "advertising offense" includes an injury that has been caused by unfair competition. *Id.* at 2–5.

---

**6.** In its Complaint, Personnel seeks injunctive relief, "damages sustained by such unfair competition, in the amount to be determined by the Court," loss of profits, attorney fees and "other

such damages as may be shown at trial. (Personnel's Complaint at 6, 8.) The Complaint is devoid of any references to tangible property damage.

### i

Paragraphs 6 and 25 of Personnel's Complaint clearly indicate that the common law unfair competition claim arises out of the trademark infringement. It was Parameter's use of "PDS" in advertising which constituted the alleged unfair competition. Moreover, Eilberg specifically stated that his client's Complaint and Counterclaim for unfair competition arise out of "Parameter's infringement of Personnel's trademark." (Massachusetts Bay's Response, Exhibit 4 at 2.)

Without factual support, Parameter says that Personnel's unfair competition claim is not limited to an offense arising out of an infringement of a trademark. It is well settled that a party may not rest on his pleadings in a motion for summary judgment. Fed.R.Civ.P. 56(e). It is also clear from the language of the Complaint and Eilberg's affidavit that the common law unfair competition claim arises out of the trademark infringement. Therefore, the plain language of the contract does not require Massachusetts Bay to provide coverage under this claim.

### ii

Personnel also filed a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for false designation of origin. The Sixth Circuit Court of Appeals has recognized that 15 U.S.C. § 1125(a) is a statutory unfair competition provision. *See, e.g., Frisch's Restaurants, Inc. v. Elby's Big Boy,* 849 F.2d 1012, 1015 (6th Cir.1988); *Wynn Oil Co v. American Way Service Corp,* 943 F.2d 595, 597 (6th Cir.1991) (district court did not err in determining that defendant's use of mark constituted unfair competition in violation of 15 U.S.C. § 1125(a)). Parameter avers the same. (Parameter's Supplemental Brief at 1–2.)

First, the Court must determine if the insurance contract provides coverage for a false designation of origin allegation. Parameter submits that to permit an exclusion for claims under 15 U.S.C. § 1125(a), which are not expressly excluded by the contract, would create the paradox of unfair competition claims being covered and then excluded. On the other hand, Massachusetts Bay contends that the definition of an advertising offense does not explicitly include false designation of origin.

Massachusetts Bay is correct. The definition of "advertising offense" does not use the term "false designation of origin." However, 15 U.S.C. § 1125(a) has been held to create a federal law of unfair competition. *See Frisch's Restaurants,* 849 F.2d at 1015; *Wynn Oil Co.,* 943 F.2d at 597; *See also LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 75 (2d Cir.1985); *Ives Laboratories, Inc. v. Darby Drug, Co., Inc.,* 601 F.2d 631, 641 (2d Cir.1979). Because the definition within the contract expressly covers advertising offenses that arise out of unfair competition, the Court concludes that this term encompasses all such allegations, including those arising out of 15 U.S.C. § 1125(a).

Having determined that the contract provides coverage for advertising offenses if the injury arises out of 15 U.S.C. § 1125(a), it now becomes necessary to determine whether it is appropriate to apply the exclusion provision to the facts in this case.

This Court finds that the common law unfair competition claim and the federal statutory claim are virtually indistinguishable. It is unclear whether the limiting language of paragraph 1 of Personnel's Complaint, which follows the common law claim, applies to the false designation of origin claim. However, paragraph 23 of Personnel's Complaint and paragraph 54 of its Counterclaim indicate that the false designation claim arises out of Parameter's use of "PDS." In addition, Eilberg's affidavit states that the false designation of origin claims in Personnel's Complaint and Counterclaim are based solely on Parameter's use of "PDS." (Eilberg Affidavit, November 17, 1992 at ¶ 6.)

Thus, it clear that the federal statutory unfair competition claim, 15 U.S.C. § 1125(a), arises out of the use of the trademark and trade name, "PDS," and, therefore, Massachusetts Bay is not obligated to provide coverage to Parameter for this claim.[7]

7. Parameter cites *Aetna Casualty and Surety Co. v. Centennial Insurance Co.,* 838 F.2d 346 (9th Cir.1988) in support of its argument that the exclusion regarding registered trademarks

### iii

 Even if this Court had held otherwise, Massachusetts Bay would have no duty to defend or indemnify the counterclaims. Parameter refers to the "duty to defend" language in *Detroit Edison Co. v. Michigan Mutual Ins. Co.*, 102 Mich.App. 136, 141–142, 301 N.W.2d 832 (1980) which proscribes that "[t]he duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured."

The law within the State of Michigan mandates that a court should look to the Complaint in this cause—not the Counterclaim—to determine the existence, if any, of an insurer's duty to defend. Nevertheless, Parameter insists that it should not be penalized for its litigation-costs savings technique.[8] However, Parameter fails to provide any case law to support its position that the duty to defend extends to the counterclaims in an insured-initiated lawsuit.

Thus, it is the opinion of this Court that Parameter's tactical decision does not change the general rule that it is the allegations within the complaint which will trigger the duty to defend. Moreover, by initiating the lawsuit, Parameter was engaged in an offensive move. The plain meaning of the duty to defend does not encompass a contractual obligation to pursue such an action. Therefore, Massachusetts Bay had no duty to defend the Counterclaim in this case.

### C. *Bad Faith*

 Having determined that Massachusetts Bay did not breach its contractual obligations to Parameter, the Court must also conclude that no act of bad faith occurred.

### IV

Accordingly, this Court will grant Massachusetts Bay's Motion for Summary Judgment with respect to liability for coverage under the property damage clause and the advertising offense liability clause. Conversely, Parameter's Motion for Summary Judgment must be denied for the reasons that have been set forth above.

IT IS SO ORDERED.

### *JUDGMENT*

On this day, the Court determined that the motion for summary judgment of the Defendant, Massachusetts Bay Insurance Company, should be granted, and the motion for summary judgment of the Plaintiff, Parameter Driven Software, Inc., should be denied.

Accordingly, a judgment shall be entered in favor of Massachusetts Bay Insurance Company in this case.

IT IS SO ORDERED.

---

should not be applied to the 15 U.S.C. § 1125(a) claim. (Parameter's Response at 13.) While *Aetna Casualty* involved an insurance contract which defined an advertising injury in much the same manner as the insurance contract in this matter, the exclusion was much narrower. It excluded liability for "infringement of registered trademark, service mark or trade name by use thereof as the registered trademark." 838 F.2d

at 348. The exclusionary clause in the present case is much broader, excluding liability for an advertising offense *arising out of* infringement of trademark, service mark or trade name.

8. By filing the action in this court, Parameter's consolidation request brought about the transfer of the Pennsylvania lawsuit to this Court.