*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0480p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SECURA INSURANCE,

                *Plaintiff-Appellant,*

    *v.*

STAINLESS SALES, INC., EVERGREEN AMERICA CORP.,
and BURLINGTON NORTHERN AND SANTA FE RAILWAY
CO.,

                *Defendants-Appellees.*

No. 04-2000

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-74793—Bernard A. Friedman, Chief District Judge.

Argued: October 25, 2005

Decided and Filed: December 21, 2005

Before: KEITH and BATCHELDER, Circuit Judges; OBERDORFER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mary Jo Boerman, BIGLER, BERRY, JOHNSTON, SZTYKIEL & HUNT, Zeeland, Michigan, for Appellant. Douglas J. Fryer, DYKEMA GOSSETT, Bloomfield Hills, Michigan, Daniel R. Rustmann, BUTZEL LONG, Detroit, Michigan, for Appellees. **ON BRIEF:** Mary Jo Boerman, BIGLER, BERRY, JOHNSTON, SZTYKIEL & HUNT, Zeeland, Michigan, for Appellant. Douglas J. Fryer, DYKEMA GOSSETT, Bloomfield Hills, Michigan, Daniel R. Rustmann, BUTZEL LONG, Detroit, Michigan, Kimberly H. Allen, BUTZEL LONG, Bloomfield Hills, Michigan, Mary C. O'Donnell, DURKIN, MCDONNELL, CLIFTON, DAVIS & O'DONNELL, Detroit, Michigan, for Appellees.

_____

## OPINION

_____

    KEITH, Circuit Judge. Plaintiff-Appellant, Secura Insurance, appeals from the district court's denial of declaratory judgment, finding that the Defendant-Appellee, Stainless Sales, is covered under the commercial general liability insurance policy. For the following reasons, we **AFFIRM**.

---

[*]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

## I. Background

This declaratory judgment action arises out of a Commercial General Liability insurance policy ("C.G.L. Policy") issued by Plaintiff-Appellant, Secura Insurance ("Secura"), to Defendant-Appellee, Stainless Sales ("Stainless"). Secura filed suit seeking a declaration from the district court regarding its obligation to defend and/or indemnify Stainless for claims and/or potential claims arising out of a sale of electrolytic tinplate ("ETP") coils to Quality Container Corporation ("Quality Container") and the damages resulting from the derailment of a Burlington Northern Santa Fe ("BNSF") train that was transporting these coils. Such claims are subject to a separate law suit currently pending before the U.S. District Court for the Eastern District of Michigan.

Stainless is an international exporter of secondary steel products. Under the sales contract at issue, Stainless agreed to sell Quality Container 400 metric tons of ETP coils, at a price of $148,000. Payment to Stainless was to be made by Quality Container through to an irrevocable letter of credit upon confirmation that Stainless had fulfilled its obligations under the sales contract. The contract required Stainless to ship the coils to Manila, Philippines.

Stainless relies on a freight forwarder to make all of its shipping arrangements, including the booking of shipping containers, as well as all rail and ocean transportation. In this case, Eastways Shipping Company ("Eastways") made Stainless' shipping arrangements. Once Stainless received confirmation that Eastways had arranged the necessary transportation, Stainless ordered seventeen shipping containers from Defendant-Appellee, Evergreen American Corporation ("Evergreen"), which were used to ship the ETP coils. Between January 7, 2002 and January 10, 2002, the ETP coils were loaded by Stainless employees into these containers, at Stainless' facility. The loading process includes completing all blocking and bracing necessary to secure the coils in the Evergreen containers.

Pursuant to the shipping arrangements prepared by Eastways, the Evergreen containers were transported from Stainless' facility to a local rail yard and placed on Norfolk Southern trains. These trains shipped the coils to Chicago, Illinois. Once in Chicago, the coils were transferred to several BNSF trains. Eastways arranged for all the loading and unloading of the various trains. The destination of these trains would have been Tacoma, Washington. Upon a safe arrival in Tacoma, the containers would have been loaded onto an Evergreen ocean vessel, destined for the Philippines. At this point, Evergreen's on-board bill of lading would have been issued. If the shipping had proceeded according to plan, Eastways would have prepared the necessary documents for presentation to the bank, including the on-board bill of lading and the irrevocable letter of credit, and Stainless would have been paid for the order. However, all did not proceed according to plan.

On January 12, 2002, a BNSF train, which was carrying some of the coils, derailed near Karnack, North Dakota, resulting in damage to rail cars, trucks, commodities, and containers. Due to the derailment, only a minority of the subject containers were ever delivered to Tacoma. Additionally, none of the subject containers were ever loaded onto the Evergreen ocean vessel, the on-board bill of lading was never issued, none of the containers were delivered to Quality Container, and Stainless was not paid.

The reason for this derailment is currently unknown. It is alleged that the derailment was caused when one of the ETP coils fell through the bottom of a container to the tracks below. It is further alleged that Stainless or others did not properly pack and/or failed to properly describe the commodity being shipped. Stainless has denied both claims.[1]

Stainless filed a suit against Evergreen and BNSF seeking compensation arising out of the loss of its ETP coils and the loss of its sale to Quality Container. The suit did not seek any coverage claims under the C.G.L. Policy. Both BNSF and Evergreen filed counter-claims against Stainless, seeking compensation

---

[1]This issue is not before this Court and its resolution is not necessary in order to decide this instant action.

for all costs and damages resulting from the derailment. Stainless asserts that such damages are covered under the C.G.L. Policy, and that Secura has an obligation to provide a defense and/or indemnification in connection with such claims. Secura filed a motion for summary judgment,[2] asking the district court to declare that the C.G.L. Policy did not provide Stainless with coverage in this instance. The district court denied the motion finding that there is coverage for Stainless under the C.G.L. Policy and declared that Secura is obligated to defend and indemnify Stainless on all such claims. Specifically, the district court found that under Section V(16)(a) of the C.G.L. Policy, the "products-completed operations hazard" exclusion did not preclude coverage because the contract between Stainless and Quality Container was not yet complete. Secura filed a timely notice of appeal.

## II. Jurisdiction

This Court has jurisdiction over Secura's appeal pursuant to 28 U.S.C. § 1291, as the district court's order denying Secura's motion for summary judgment is an appealable final decision.

## III. Analysis

Secura argues that the district court erred in ruling that the C.G.L. Policy provides coverage for Stainless under section V(16)(a). We review an order granting summary judgment *de novo*. *See Trustees of the Michigan Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 590 (6th Cir. 2000). Both parties agree that Michigan law governs this diversity action, as the insurance contract was entered into in Michigan, and the insured, Stainless, is a resident of Michigan.

Michigan law requires us to interpret the language of the insurance policy using Michigan's principles of contract construction. *Arco Industries Corp. v. American Motorists Ins. Co.,* 448 Mich. 395, 402, 531 N.W.2d 168 (1995). First, an insurance contract must be enforced in accordance with its terms. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 207, 476 N.W.2d 392 (1991). An insurance company can not be held liable for a risk it did not assume under the policy. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431 (1992). We do, however, apply the rule of reasonable expectations. Under this rule, a court finds coverage under a policy if "the policyholder, upon reading the contract language, is led to a reasonable expectation of coverage." *Marlo Beauty Supply, Inc. v. Farmers Ins. Group of Companies*, 227 Mich.App. 309, 575 N.W.2d 324 (1998) (quoting *Fire Ins. Exchange v. Diehl*, 450 Mich. 678, 687, 545 N.W.2d 602 (1996)).

Second, insurance policy terms that are clear and precise must be enforced as written. *Stine v. Continental Casualty Co.*, 419 Mich. 89, 114, 349 N.W.2d 127 (1984). While the policy is construed in favor of the insured when an ambiguity is found, *Auto Club Ins. Ass'n v. DeLaGarza*, 433 Mich. 208, 214, 444 N.W.2d 803 (1989), we can not apply strained constructions to the meaning of well recognized words, solely for the purpose of benefitting an insured. *Upjohn Co.*, at 208, n. 8 (quoting *Wozniak v. John Hancock Mutual Life Ins. Co.*, 288 Mich. 612, 615, 286 N.W. 99 (1939)). We must interpret the terms of the contract in accordance with their commonly used meanings. *Group Ins. Co. of Michigan v. Czopek*, 440 Mich. 590, 596, 489 N.W.2d 444 (1992). Finally, if an exclusion is applicable to any claim at issue, the insured loses its coverage under the C.G.L. Policy. *Fresard v. Michigan Millers Mut. Ins. Co.*, 414 Mich 686, 695; 327 N.W.2d 286 (1982).

We begin by discussing whether the "products-completed operations hazard" exclusion precludes Secura from coverage, as it is defined in section V(16)(a) of the C.G.L. Policy. Under the exclusion, the policy provides that: "This insurance does not apply to bodily injury or property damage included within

---

[2]Secura's motion for summary judgment was deemed as a request for declaratory relief by the district court. Both BNSF and Evergreen, filed counterclaims against Stainless. When Stainless requested that Secura defend and/or indemnify them against these claims, Secura filed this motion.

the products-completed operations hazard." (J.A. at 166.) Section V(16)(a) defines the "products-completed operations hazard" exclusion as follows:

16. Products-completed operations hazard:

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

1. Products that are still in your physical possession; or

2. Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

a) When all of the work called for in your contract has been completed.

b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

c) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

*Id.*

Secura argues that based on the language of the policy, Stainless' claim for coverage is excluded under the products-completed hazard exclusion, as defined in section V(16)(a)(2)(a). Specifically, Secura suggest that all of Stainless' work had been completed once the coils were loaded into the containers at Stainless' warehouse. This argument lacks merit. We agree with the district court that Stainless' work was not completed until Stainless delivered the coils to a shipper bound for Manila and obtained from that shipper a bill of lading for the transport of the coils to Manila.

In fact, there were a number of acts contemplated under the sales contract with Quality Container that were not completed. For example, a majority of the ETP coils subject to the transaction never reached the port in Tacoma, Washington; no ETP coils were ever placed on the Evergreen ocean vessel; no on-board bill of lading was ever issued; no ETP coils were ever delivered to Quality Container; and Stainless did not complete all the necessary acts as detailed in the irrevocable letter of credit to receive payment.

Whether we interpret section V(16)(a)(2)(a), which reads "when all of the work called for in your contract has been completed," as ambiguous[3] or unambiguous, the result, here, is still the same. Stainless had not completed all the work called for under the contract. Therefore, the "products-completed operations hazard" exclusion does not apply and Stainless is covered under the insurance policy.

**IV. Conclusion**

For the foregoing reasons, the decision of Judge Friedman is **AFFIRMED**.

---

[3]Of course if we assume that section 16(a) is ambiguous then we must construe this section in the light most favorable to the insured. Under either interpretation, it is clear that all the work called for in the contract was not yet completed when the BNSF train derailed.